Michael Charles MADDOX, Appellant,

v.

The STATE of Texas, Appellee.

No. 43783.

Court of Criminal Appeals of Texas.

May 19, 1971.

**756**

Charles C. Smith, Jr., Cameron, for appellant.

John B. Henderson, Jr., County Atty., Cameron, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from an order revoking probation.

On May 20, 1969, the appellant waived trial by jury and entered a plea of guilty to the offense of burglary. His punishment was assessed at three years, but the imposition of the sentence was suspended and he was place on probation. Among the conditions of probation imposed was the requirement that the appellant "Commit no offense against the laws of this state or any other state or the United States of America."

On March 18, 1970, the State filed a motion to revoke probation alleging that on or about March 14, 1970, the appellant had violated his probation by committing the offense of robbery by assault upon Ponsiano Ramirez, Jr., in Milam County.

On April 8, 1970, a hearing on said motion commenced. On April 10, 1970, the court granted the motion to revoke probation, reduced the punishment assessed from three to two years and imposed sentence. Notice of appeal was given.

It is appellant's contention on appeal that the trial court abused its discretion in revoking probation, the evidence being insufficient to show a violation of his probationary conditions.

The State's evidence reflects that on March 13, 1970, Ponsiano Ramirez, Jr., rode the bus from Houston to Ft. Hood, Texas, to visit a relative. The following day Army friends of his relative drove him to Temple, Texas. As he was leaving a Dairy Mart in Temple where he had eaten, he encountered the appellant Maddox, Leland Lyles and Kenneth Teal, who inquired of him as to where he was going. When he replied "Houston" they invited him to ride with them to that city. He entered the automobile (later shown to belong to the appellant) just as it was "getting dark." Ramirez revealed that near the community of Buckholts in Milam County the threesome stopped the car and relieved themselves and told him to get out and stretch his legs. When he did Maddox asked how much money he had, Teal went around to his back, and Lyles, holding a beer bottle in his hands, asked if he wanted to get "busted in the head." Ramirez, who related he had been robbed twice before, stabbed and had his ribs broken, handed three $20 bills, one $10 bill "and some ones" to Lyles. Ramirez then ran up the road, but asked for his

suitcase which was thrown out of the car. Later he was able to flag down a highway patrolman to whom he gave a description of his assailants. He was taken into Cameron where he identified the appellant and his two companions who had been taken into custody on an unrelated matter.

■ The evidence is clearly sufficient to show appellant's guilt as a principal to the offense of robbery and to reflect a violation of his probationary conditions.

The appellant contends that Ramirez's testimony was so inconsistent and "filled with conflicts" as to be unbelievable, particularly when his prior criminal record is considered. The appellant makes much of the conflict in Ramirez's testimony as to the distance traveled before the alleged offense and the actual mileage, the speed of the automobile, the time lapses, his uncertainty as to the exact location where his money was taken, etc. It was shown, however, that Ramirez had never been in the Ft. Hood, Temple and Cameron area before and was unfamiliar with such area.

Teal, who testified for the appellant, related that he, the appellant and Lyles had picked up a hitchhiker (Ramirez) near Temple. He corroborated Ramirez's testimony that during the course of their ride Maddox had raced with a Mustang automobile. Teal denied any offense occurred and testified they had let Ramirez out of the car with his suitcase in front of a dance hall in Buckholts, which they later entered and where they were taken into custody as minors consuming beer and transported into Cameron.

■ In a revocation of probation hearing the trial judge is the trier of the facts and the sole judge of the credibility of the witnesses and the weight to be given to their testimony. He may accept or reject any part of a witness' testimony. Ellis v. State, Tex.Cr.App., 456 S.W.2d 398; Hulsey v. State, Tex.Cr.App., 447 S.W.2d 165. See Roberts v. State, Tex.Cr.App., 363 S.W.2d 261; Samora v. State, 169 Tex.Cr.R. 631, 336 S.W.2d 627. In reviewing the record before us, we cannot agree that the trial court abused its discretion in revoking probation.

As earlier noted, the court at the same time it revoked probation reduced the punishment assessed from three years to two years, reforming the judgment, and then imposed sentence. This the court is permitted to do under the provisions of Article 42.12, Sec. 7, Vernon's Ann.C.C.P., provided the probationer has served one-third of the punishment assessed or two years, whichever is less. Beshear v. State, 169 Tex.Cr.R. 131, 332 S.W.2d 724; Capuchino v. State, Tex.Cr.App., 389 S.W.2d 296; Trevino v. State, Tex.Cr.App., 464 S.W.2d 859. See also Potter v. State, Tex.Cr.App., 420 S.W.2d 948; Washington v. State, Tex.Cr.App., 361 S.W.2d 395.

The court is not permitted, however, to reduce the punishment assessed where at the time of the revocation the probationer has not served one-third of the punishment assessed or two years. Smith v. State, Tex.Cr.App., 399 S.W.2d 557; DeLeon v. State, Tex.Cr.App., 466 S.W.2d 573; Taylor v. State, Tex.Cr.App., 466 S.W.2d 766.

The appellant had not at the time of the revocation here involved served one-third of the punishment assessed or two years.

■ Therefore, the judgment in the case at bar is reformed to reflect the assessment of punishment at three years, and the sentence is reformed to show that the appellant shall be confined in the Texas Department of Corrections "for not less than 2 nor more than 3 years."

As reformed, the judgment is affirmed.