Doyle Gene **KELLY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 44791.

Court of Criminal Appeals of Texas.

May 3, 1972.

---

**468**

Frank R. Jewell, Ennis, for appellant.

Ward P. Casey, County Atty., Waxahachie, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

This is an appeal from a revocation of probation.

The revocation of probation proceedings against appellants Doyle Gene Kelly and Jerry Dean Mitchell, Tex.Cr.App., 483 S. W.2d 481, this day decided, were held together; however, their cases will be considered separately on appeal because of the different fact situations involved.

Appellant Kelly was convicted of possession of marihuana on February 4, 1971, assessed a five (5) year sentence and placed on probation. Among the conditions of his probation was a provision that he "[A]void persons or places of disreputable or harmful character."

The petition for revocation of probation alleges that appellant "did violate his probation in that [he] did then and there associate and visit with persons and in places of disreputable and harmful character, towit: that [he] did then and there associate and visit with persons who were known narcotic users and persons who have been convicted of possession of narcotic (sic), and that further the said Doyle Gene Kelly did then and there associate and visit in a place where narcotics was (sic) being used and kept."

The State's amended petition asserts that the persons of disrepute referred to are "Jerry Dean Mitchell, a convicted narcotics possessor, Bernie Prachyl and Marion Harper," and that the place of disrepute referred to is the "premises located at 611 South Dallas Street, Ennis, Ellis County, Texas," which was "under the control of Bernie Prachyl" and which was also the "place where narcotics were being used and kept."

The record reflects that on February 14, 1971, acting pursuant to a search warrant based on information from an unidentified informant, three Ellis County Deputy Sheriffs entered the garage apartment at 611 South Dallas Street, Ennis, Texas. The apartment contained a single living-room-bedroom area, a kitchen and a bathroom. Appellant was seated in the kitchen eating a piece of cake when the deputies arrived.

One of the officers testified that marihuana was found in three places in the livingroom-bedroom area and that none was found on or near Kelly but that there was an odor of marihuana in the air and on appellant's clothing.

 Appellant contends that the court erred in failing to require proof of the charges against him beyond a reasonable doubt. However, this Court has held that a revocation proceeding was not in the nature of a criminal trial. Tate v. State, Tex.Cr.App., 365 S.W.2d 789; Branch v. State, Tex.Cr.App., 465 S.W.2d 160; Hood v. State, Tex.Cr.App., 458 S.W.2d 662. Further revocation may be based on a finding by the trial court that the terms of probation have been violated. Hall v. State, Tex.Cr.App., 452 S.W.2d 490; Ex parte Bruinsma, 164 Tex.Cr.R. 358, 298 S.W.2d 838; Seymour v. Beto, 5 Cir., 383 F.2d 384. In such a proceeding the judge is the sole trier of the facts, the credibility of the witnesses and the weight to be given their testimony. Hall v. State, supra; Maddox v. State, Tex.Cr.App., 466 S.W.2d 755; Hulsey v. State, Tex.Cr.App., 447 S.W.2d 165; and Farmer v. State, Tex.Cr.App., 475 S.W.2d 753. The only question before this Court is whether the trial court abused its discretion in revoking probation. Bennett v. State, Tex.Cr.App., 476 S.W.2d 281; Barnes v. State, Tex.Cr.App., 467 S.W.2d 437; Manning v. State, Tex.Cr.App., 412 S.W.2d 656; Seymour v. Beto, supra.

Appellant relies on In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1971), to support his contention that he is entitled to have the question of his revocation decided "beyond a reasonable doubt."

However, in Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) the Supreme Court of the United States said that Winship, supra,

". . . went no further than to confirm the fundamental right that protects 'the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'"

and held that since neither a confession or the question of its voluntariness is an element of the crime charged, a judge could determine its admissibility by a less stringent standard; i. e., by a preponderance of the evidence, than is necessary to determine guilt or innocence.

 Likewise, in the case at bar, we are not dealing with guilt or innocence, with an initial determination of criminal culpability as in Winship, supra. That issue was decided adversely to appellant at his original trial. The question at a revocation hearing is whether the appellant broke the contract he made with the court after the determination of his guilt. It should be remembered that a defendant is not entitled to probation as a matter of right; granting probation is entirely within the trial court's discretion.

 The majority of this Court is committed to the viability of the probation laws and favors any logical interpretation of them which would tend to encourage the granting of probation where at all justified. We are convinced that the trial judge is more likely to grant probation in a case where he is assured that if the terms of probation are violated he might revoke the same, without undue delay and protracted litigation. We, therefore, conclude it is not only logically inconsistent but judicially unsound to suggest that the standard of proof necessary to revoke

probation should be as stringent as the one necessary to support the initial conviction.[1]

Appellant's first contention is overruled.

■ Appellant's next two contentions are that the court erred in failing to hold that the terms of his probation were indefinite and uncertain and that the court failed to show knowledge on the part of appellant that the alleged persons and places were disreputable and harmful.

The State contends that the fact that appellant was found in an apartment in which there was an odor of marihuana is sufficient circumstantial evidence to impute knowledge to appellant that he was in the company of harmful persons at a harmful place.

The record does not establish that either Prachyl or Harper had prior criminal records. Mitchell had been convicted of possession of marihuana in 1970 and was on probation at the time of this occurrence. Appellant Kelly testified that he knew nothing disreputable about Prachyl or Harper and that he knew Mitchell only by name but had never spoken to him. He and several others present testified no marihuana was smoked that evening.

Assuming that appellant did not know that the three individuals were of disreputable character as required by Jackson v. State, Tex.Cr.App., 464 S.W.2d 153, and Steed v. State, Tex.Cr.App., 467 S.W.2d 460, the fact that appellant, who had been convicted of possession of marihuana several days before and who admitted having smoked marihuana in Vietnam and knowing its odor, was found in an apartment where there was an odor of marihuana and where he admitted having been for several hours without a plausible explanation is sufficient for the judge to conclude that appellant knew he was at a harmful place in violation of his probation. Such a place was obviously harmful to the appellant since he was on probation for possession of marihuana.

Appellant's second and third contentions are overruled.

■ The dissent raises a question concerning the manner in which probation was granted which disturbs me. At no time during the hearing on the motion to revoke did the appellant raise a question as to the sufficiency of the order of probation. While I cannot condone the loose manner in which the original judgment[2] placing appellant on probation was worded,[3] nor the fact that there is no showing that the clerk complied with his duties under Article 42.12 6(a), Vernon's Ann. C.C.P., I have concluded there is no reversible error since the appellant never specifically claimed he was not aware of the terms of his probation but only claimed that they were vague and indefinite. See Blackshire v. State, Tex.Cr.App., 464 S.W. 2d 108. Further, the record reflects that during sentencing the prosecutor called the court's attention to the fact that he believed that the court had specifically admonished the appellant to stay away from people who smoke marihuana and not to use it himself. The Honorable Bruce Allen presided at both the appellant's original trial and at the revocation hearing.

There is no abuse of discretion.

The judgment is affirmed.

---

1. We call attention to that part of the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Probation, (Sec. 5.4(a) (iii) (Approved Draft 1970), which suggests that the "establishment of the [revocation] violation by the government [be] by a *preponderance of the evidence*." (Emphasis added)

2. The judgment stated: "Imposition of sentence suspended. Defendant placed on probation for said time in accordance with the provisions of Art. 42.12 of the Texas Code of Criminal Procedure."

3. See Ex parte Pittman, 157 Tex.Cr.R. 301, 248 S.W.2d 159.

ODOM, Judge (concurring).

In view of the importance of the decision reached in this case, I concur in the majority opinion, but feel that I should more fully express my reasons.

Appellant urges this court to require the utilization of the reasonable doubt standard in revocation hearings. I can find nothing which indicates that either common sense or the Constitution of the United States requires the state to meet this burden.

Whether a person convicted of a crime should be placed on probation rests within the sound discretion of the trier of fact. e. g. Smith v. State, Tex.Cr.App., 468 S.W. 2d 828; Campbell v. State, Tex.Cr.App., 456 S.W.2d 918; Glass v. State, Tex.Cr. App., 450 S.W.2d 320; Ponce v. State, Tex. Cr.App., 398 S.W.2d 570; Stratmon v. State, 169 Tex.Cr.R. 188, 333 S.W.2d 135. As this court stated in Campbell v. State, supra: ". . . there is no right to either the court's or the jury's grace. . . ." An accused seeking probation bears the burden of proving his eligibility under the requirements of the Adult Probation Law. e. g. Brumfield v. State, Tex.Cr.App., 445 S.W.2d 732; Herring v. State, Tex.Cr.App., 440 S.W.2d 649.

The granting of probation serves the function of protecting society while providing a means of rehabilitating lawbreakers. See, Mempha v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932); Hill v. State, Tex.Cr.App., 480 S.W.2d 200 (1972). In order to effectuate this purpose, this court has always held that the relationship between the probationer and the trial court is contractual in nature. e. g. McDonald v. State, Tex.Cr.App., 442 S.W.2d 386; Glenn v. State, 168 Tex.Cr.R. 312, 327 S.W. 2d 763.

As the Supreme Court of the United States wrote in Burns v. United States, supra, a probationer

". . . is still a person convicted of an offense, and the suspension of his sentence remains within the control of the court. The continuance of that control . . . is essential to the accomplishment of its beneficial purpose, as otherwise probation might be more reluctantly granted, or, when granted, might be made the occasion of delays and obstruction which would bring reproach upon the administration of justice."

Thus a probation revocation hearing is not a criminal trial. Hill v. State, supra; Cooper v. State, Tex.Cr.App., 447 S.W.2d 179; Hulsey v. State, Tex.Cr.App., 447 S.W.2d 165; Manning v. State, Tex.Cr. App., 412 S.W.2d 656. It is, instead, administrative in nature. United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2d Cir. 1970); United States ex rel. Lombardino v. Heyd, 318 F.Supp. 648 (E.D. La.1970), aff'd per curiam, 438 F.2d 1027 (5th Cir. 1971); cert. denied, 404 U.S. 880, 92 S.Ct. 195, 30 L.Ed.2d 160 (1972); Hill v. State, supra. As this court stated in Hulsey v. State, supra:

". . . the result of such a hearing to revoke is not a 'conviction' but a finding upon which the trial court might exercise its discretion by revoking or continuing probation."

Even where the state has shown a violation of the probationary terms, the trial judge is vested with the discretion to allow the probationer to continue on probation. Dunn v. State, 159 Tex.Cr.R. 520, 265 S.W. 2d 589.

A probation revocation being administrative in nature, procedural and evidentiary requirements are not enforced as strictly as they would be in a criminal trial. This court has held: (1) that, where a probationer admits that he has violated a probationary term, no further evidence need be heard in order for the trial court to revoke

probation[1]; (2) that appointed counsel need not be afforded ten days to prepare for such a hearing[2]; (3) that there is no necessity that the state obtain a final conviction for an offense alleged as grounds for revocation before the court can revoke[3]; (4) that a probationer does not have a right to trial by jury at a revocation hearing[4]; and (5) that the testimony of an accomplice witness need not be corroborated in order for the evidence to be sufficient to support the decision of the court to revoke.[5]

Appellant now asks this court to saddle the administration of the probationary system with a standard of proof which would completely undermine its effectiveness. Appellant asks us to believe that such a result is required by the due process clause under the holding of the United States Supreme Court in In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). His reliance on that case is misplaced.

Any inquiry into—

" . . . what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." [6]

In *Winship*, the court was presented with a situation in which a twelve year old boy had been adjudged to be a juvenile delinquent. The judge of the New York Family Court found that the boy had committed the offense of larceny. Under New York law, the boy was liable to confinement for as long as six years. Since the child was being punished for the commission of the penal offense, the court held that his guilt must be proven beyond a reasonable doubt.[7]

To apply the holding of *Winship* to a probation revocation hearing would be a complete denial of the reasoning in that case, because, where a person is not being held criminally liable for his prior acts, *Winship* has no application. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); Tippett v. Maryland, 436 F.2d 1153 (4th Cir. 1971). See also Nilsson v. State, Tex.Cr.App., 477 S.W.2d 592 (1972). In a probation revocation hearing, guilt has already been determined.

In the instant case, appellant is not being held criminally liable because he associated with persons who used narcotics or because he visited places where narcotics were kept. He is being sent to prison because he was convicted on February 4, 1971, by proof beyond a reasonable doubt, of the offense of unlawful possession of marihuana and has since failed to rehabilitate himself by living up to the terms of probation. e. g. Burns v. United States, supra; Hulsey v. State, supra.

On the surface, appellant's contention that he has been "convicted" of violating the terms of his probation has some appeal. However, I submit that, upon careful analysis, the logical flaws and inherent defects in such contention become apparent.

1. Mitchell v. State, Tex.Cr.App., 482 S.W. 2d 221 (1972). Where the accused pleads guilty to the commission of a felony, the state still must present other evidence to support the conviction where trial is before the court. Article 1.15, V.A.C.C.P.; Edwards v. State, Tex.Cr.App., 463 S.W. 2d 733.

2. Hill v. State, supra. In a criminal trial ten days must be afforded under Article 26.04, V.A.C.C.P.

3. e. g., Farmer v. State, Tex.Cr.App., 475 S.W.2d 753; Hulsey v. State, supra.

4. e. g., Hulsey v. State, supra; Dunn v. State, supra.

5. e. g., Barnes v. State, Tex.Cr.App., 467 S.W.2d 437; Dunn v. State, supra.

6. Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

7. It should be noted that the court in *Winship* was very careful to discuss the fact that requiring the reasonable doubt standard would not affect the informality or flexibility of the juvenile hearing.

It is important to note that, after careful study, the American Bar Association Project on Standards for Criminal Justice recommended "establishment of the violation by the government by a preponderance of the evidence." ABA Standards Relating to Probation, Sec. 5.4(iii) (Approved Draft 1970).

This seems to be the accepted procedure in other jurisdictions. e. g. Shaw v. Henderson, 430 F.2d 1116 (5th Cir. 1970); United States v. D'Amato, 429 F.2d 1284 (3rd Cir. 1970); United States v. Lauchli, 427 F.2d 258 (7th Cir. 1970), cert. denied, 400 U.S. 868, 91 S.Ct. 111, 27 L.Ed.2d 108 (1970); Amaya v. Beto, 424 F.2d 363 (5th Cir. 1970); United States v. Nagelberg, 413 F.2d 708 (2d Cir. 1969), cert. denied, 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970); State v. Leighty, 5 Wash.App. 30, 485 P.2d 91 (1971); Smith v. State, 11 Md. App. 317, 273 A.2d 626 (1971); Dickson v. State, 124 Ga.App. 406, 184 S.E.2d 37 (1971); People v. Majerus, 271 N.E.2d 380 (Ill.App.1971); People v. Hardnett, 270 N.E.2d 864 (Ill.App.1971); People v. Hayko, 7 Cal.App.3d 604, 86 Cal.Rptr. 726 (1970); Raper v. State, 462 S.W.2d 261 (Tenn.Cr.App.1970); People v. Valle, 7 Misc.2d 125, 164 N.Y.S.2d 67 (Ct.Spec.Sess. 1957); Reinmuth v. State, 163 Neb. 724, 80 N.W.2d 874 (1957).

Moreover, the United States Supreme Court has recently declined review in two cases which raised the same contention as raised by appellant herein; once just prior to its decision in *Winship* [8] and once since that decision.[9]

Finding no logical or legal reason for destroying the utility of probation as a tool for rehabilitation by requiring that the beyond a reasonable doubt standard be used, I concur.

ROBERTS, J., joins in this concurrence.

ONION, Presiding Judge (dissenting).

As noted in the majority opinion, the revocation of probation proceedings against this appellant and against Jerry Dean Mitchell were held at the same time. At the conclusion thereof, the trial judge stated:

"Well, of course, you fellows have done a good job. I will have to say that. I am like King Agrippa when he said, 'Paul, thou almost persuadest me.' But we do have a case that the State has brought evidence on *and it isn't beyond a reasonable doubt admittedly* and I don't have the wisdom and knowledge to know who is telling the truth and who isn't. I certainly don't get any pleasure out of revoking a probation and sending either of these boys to the Texas Department of Corrections, but I also know that we *have got to have law and order. For that reason and under the facts, I am going to revoke the probation of both of these boys.*" (emphasis supplied)

It is clear that the trial court did not use the reasonable doubt standard of proof which appellant claims he should have used, nor is it altogether clear what standard he did use. Appellant relies upon In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970).

Apparently for the first time, the question of the burden of proof required in a revocation of probation proceeding is squarely presented.

This court has repeatedly said that once probation has been granted, it should not be arbitrarily withdrawn by the court, and the court is not authorized to revoke without having found that the probationer has

---

8. United States v. Nagelberg, 413 F.2d 708 (2d Cir. 1970); cert. denied 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970).

9. United States v. Lauchli, 427 F.2d 258 (7th Cir. 1970), cert. denied, 400 U.S. 868, 91 S.Ct. 111, 27 L.Ed.2d 108 (1970). See also Arciniega v. Freeman, 404 U.S. 4, 92 S.Ct. 22, 30 L.Ed.2d 126 (1971).

violated a condition of his probation.[1] Certainly there is a presumption of innocence. And it has also been stated that the burden of proof in revocation proceedings to show such a violation of a probationary condition is upon the State.[2] However, the standard of proof has never been adequately discussed. This court has not addressed itself to the question of whether the burden of proof is "beyond a reasonable doubt," "by a preponderance of the evidence," "by clear and convincing proof" or some other acceptable standard.

This court has held on a number of occasions that revocation proceedings are not criminal trials in the constitutional sense.[3] Since the earlier decisions of this court, however, concerning the nature of revocation proceedings, it is now clear that while a state is not constitutionally required to provide for probation revocation hearings as a part of its criminal process anymore than it is required to provide for appellate review, but that when it does, then due process and equal protection of the law is fully applicable thereto.[4]

The necessity of the application of due process and equal protection to revocation proceedings was recognized by this court in Campbell v. State, 456 S.W.2d 918 (Tex. Cr.App.1970), where it was also stated:

"It would indeed now be difficult to conclude that probation revocation hearings are not criminal proceedings 'where substantial rights of an accused may be affected.' Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336. The revocation proceedings cannot be isolated from the context of the criminal process. See Crawford v. State, Tex.Cr.App., 435 S.W.2d 148." 456 S.W.2d at 921–922.

See also McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968).

And only recently in Fariss v. Tipps, 463 S.W.2d 176 (Tex.1971), which involved an application for writ of mandamus, the Texas Supreme Court held that a proceeding to revoke probation is a "criminal prosecution" within the state constitution and a probationer was entitled to a speedy trial and further that the speedy trial provision of the Sixth Amendment of the United States Constitution was a due process requirement applicable to state revocation proceedings through the Fourteenth Amendment. See Article 24, Vernon's Ann.P.C.

Certainly it has been recognized that a revocation proceeding is a critical stage of the criminal process where counsel must be appointed if the probationer is indigent, without counsel and has not been warned of the same.[5]

In Re Winship, supra, held that proof beyond a reasonable doubt, which is re-

1. Wozencraft v. State, 388 S.W.2d 426 (Tex.Cr.App.1965); Campbell v. State, 456 S.W.2d 918, 922 (Tex.Cr.App.1970); Jackson v. State, 464 S.W.2d 153 (Tex. Cr.App.1971). See also United States v. Taylor, 449 F.2d 117 (9th Cir. 1971).

2. Zane v. State, 420 S.W.2d 953 (Tex.Cr. App.1967); Campbell v. State, supra note 1; Perry v. State, 459 S.W.2d 865 (Tex. Cr.App.1970); Hulsey v. State, 447 S.W. 2d 165 (Tex.Cr.App.1969).

3. Wilson v. State, 156 Tex.Cr.R. 228, 240 S.W.2d 774 (1951); Leija v. State, 167 Tex.Cr.R. 300, 320 S.W.2d 3 (1958); Hulsey v. State, supra note 2; and cases there cited.

4. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963);

Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).
See Hoffman v. State, 404 P.2d 644 (Alaska 1965); Williams v. Commonwealth, 350 Mass. 732, 216 N.E.2d 779 (1966); Blea v. Cox, 75 N.M. 265, 403 P.2d 701 (1965).
See also this writer's original dissent in Crawford v. State, 435 S.W.2d 148, 150 (Tex.Cr.App.1968).
Cf. Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966).

5. Art. 42.12, Vernon's Ann.C.C.P.; Ex parte Williams, 414 S.W.2d 472 (Tex.Cr. App.1967); Mempa v. Rhay, supra. Mempa holding as to the right to counsel at probation revocation proceedings applies retroactively. McConnell v. Rhay, supra; Ex parte McDonald, 469 S.W.2d 173 (Tex.Cr.App.1971).

quired by the due process clause in criminal trials, is among the "'essentials of due process and fair treatment' required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." 397 U.S. at 359, 90 S.Ct. at 1070.[6]

The Supreme Court noted that proof beyond a reasonable doubt in criminal cases dated from our early years as a nation and that such standard ". . . plays a vital role in the American scheme of criminal procedure." 397 U.S. at 363, 90 S.Ct. at 1072. "It is," the court stated, "a prime instrument for reducing the risk of convictions resting on factual error." Id. See also Article 38.03, Vernon's Ann.C. C.P., establishing the reasonable-doubt standard in all criminal cases in Texas.

The court further wrote in *Winship*: ". . . As we said in Speiser v. Randall, *supra,* 357 U.S. [513] at 525–526, 78 S.Ct. [1332], at 1342 [2 L.Ed.2d 1460]: 'There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value— as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of . . . persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt.' To this end, the reasonable-doubt standard is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.' Dorsen & Rezneck, In

Re Gault and the Future of Juvenile Law, 1 Family Law Quarterly, No. 4, pp. 1, 26 (1967).

"Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community *in applications of the criminal law.* It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. . . ." (emphasis supplied) 397 U.S. at 364, 90 S.Ct. at 1072.

Further, the late Mr. Justice Harlan in his concurring opinion in *Winship* wrote:

". . . Although the phrases 'preponderance of the evidence' and 'proof beyond a reasonable doubt' are quantitatively imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions." 397 U.S. at 370, 90 S.Ct. at 1076 (concurring opinion).

And the majority opinion rejected the suggestion that there was only a "tenuous difference" between the reasonable-doubt and preponderance standards.

". . . In this very case, the trial judge's ability to distinguish between the two standards enabled him to make a finding of guilt that he conceded he might not have made under the standard of proof beyond a reasonable doubt. Indeed, the trial judge's action evidences the accuracy of the observation of commentators that 'the preponderance test is susceptible to the misinterpretation that it calls on the trier of fact merely to perform an abstract weighing of the

---

See also Crawford v. State, supra; Eiland v. State, 437 S.W.2d 551 (Tex. Cr.App.1969) ; Ex parte Fletcher, 442 S.W.2d 705 (Tex.Cr.App.1969) ; Ex parte Fuller, 435 S.W.2d 515 (Tex.Cr.App. 1969) ; Ex parte Buffington, 439 S.W.2d 345 (Tex.Cr.App.1969) ; Ex parte Bird, 457 S.W.2d 559 (Tex.Cr.App.1970).

6. See also Santana v. State, 431 S.W.2d 558 (Tex.Civ.App.—Amarillo 1968), rev'd 444 S.W.2d 614 (Tex.1969), vacated and remanded for reconsideration in light of *Winship,* 397 U.S. 596, 90 S.Ct. 1350, 25 L.Ed.2d 594 (1970) (per curiam), dism'd with prejudice on remand 457 S.W. 2d 275 (Tex.1970) (per curiam).

evidence in order to determine which side has produced the greater quantum, without regard to its effect in convincing his mind of the truth of the proposition asserted.' Dorsen & Rezneck, *supra,* at 26–27." 397 U.S. at 367–368, 90 S.Ct. at 1074.

The majority opinion noted that In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) decided that, although the Fourteenth Amendment does not require that the adjudicatory stage of a juvenile delinquency proceeding conform with all the requirements of a criminal trial or even of the usual administrative proceeding, the due process clause does require application during such stage of "the essentials of due process and fair treatment." The court concluded that the constitutional safeguard of proof beyond a reasonable doubt was as much required in such proceedings as those safeguards applied in *Gault*—notice of charges, right to counsel, rights of confrontation and examination, and the privilege against self-incrimination.

The appellant urges that the holding in *Winship* compels the application of the reasonable-doubt standard to revocation of probation cases. It, at least, logically follows. To hold that adult probationers are to be denied due process under the correctional rhetoric of *in-loco parentis* or for other reasons while juveniles are receiving due process would be, in my opinion, an arbitrary distinction and would raise serious equal protection issues as well as due process considerations.[7]

When all the legal niceties are laid aside, a proceeding to revoke probation involves the right of an individual to continue at liberty or to be imprisoned. It involves the possibility of a deprivation of liberty just as much as original criminal action or ju-

venile delinquency proceeding. The factfinding process is just as adverse as in other proceedings where the accused is afforded due process rights including the reasonable-doubt standard.

In Note, 1971 Wis.L.Rev. 648, 657, it is written:

". . . At numerous other steps in the criminal procedure where liberty is threatened, the Constitution has been construed to guarantee due process. This is always the case at the original trial. Revocation of probation is not merely a reconsideration of the old charges with a new sentence. It is the imposing of an old sentence due to *new* allegations. The chance that these new allegations may be wrong is just as great as the chance that the original charges were wrong. The chance for error or arbitrary justice is no less great the second time and 'liberty' no less valuable."

It has been held in this state that the result of a hearing to revoke probation is not a "conviction" but a finding upon which the trial court might exercise its discretion by revoking or continuing probation.[8] And as noted earlier, this court has frequently said that revocation hearings are not trials in the constitutional sense.

This same type of reasoning was advanced in *Winship* in support of the claim that there had been no deprivation of due process and that the reasonable-doubt standard of proof was not required in juvenile proceedings. It found favor with the New York Court of Appeals but was expressly rejected by the United States Supreme Court who noted that labels and good intentions do not obviate the need for criminal due process safeguards in

---

7. In *Winship,* the Supreme Court said: "The same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child." 397 U.S. at 365, 90 S.Ct. at 1073. *Cf.* Note, 1971 Wis.L.Rev. 648, 654–55.

8. Dunn v. State, 159 Tex.Cr.R. 520, 265 S.W.2d 589 (1954); Soliz v. State, 171 Tex.Cr.R. 376, 350 S.W.2d 566 (Tex.Cr. App.1961); McDonald v. State, 393 S.W. 2d 914 (Tex.Cr.App. 1965).

juvenile courts where the possible loss of liberty is involved.

Certainly the use of the reasonable-doubt standard in Texas revocation of probation proceedings need not necessarily disturb the earlier Texas decisions nor have any real effect on the flexibility or speed of the revocation hearing at which the fact-finding takes place. I venture to say that most trial judges in Texas use the reasonable-doubt standard in revocation proceedings anyway, whether stated in their orders of revocation or not. It is the burden of proof that most criminal trial judges are accustomed to applying. See Article 38.03, supra.

I would hold that the constitutional safeguard of proof beyond a reasonable doubt as a matter of due process and fundamental fairness is required in Texas revocation of probation proceedings along with the right to counsel, speedy trial, etc.[9]

When one assesses the consequences of an erroneous factual determination in a revocation of probation proceeding in which the probationer is accused of violating a probationary condition, I think it must be concluded that while the consequences are not altogether identical to those in a criminal trial or those in a juvenile delinquency proceeding, the differences will not support a distinction in the standard of proof.

The reasonable-doubt standard provides concrete substance for the presumption of innocence that surely prevails in revocation hearings. *Cf.* In Re Winship, supra, 397 U.S. at 363, 90 S.Ct. 1068, 25 L.Ed.2d 368.

The majority characterizes my conclusion as logically inconsistent and judicially unsound which is their privilege. I am perfectly willing to allow my conclusion to stand the test of time. The majority does not seem to have the same confidence.

Although rejecting the reasonable-doubt standard, the majority fails to inform the bench and bar what standard should be applied in revocation proceedings and how the instant case met that standard. This is indeed regrettable.

9. Under Texas procedure when a probationer is accused of having violated his probationary conditions by committing a penal offense, he is not entitled to require that prior to revocation there be a trial and conviction in a court of competent jurisdiction for the offense which forms the basis of the revocation where the burden of proof would be beyond a reasonable doubt. Dunn v. State, supra note 7; Ex parte Bruinsma, 164 Tex.Cr. R. 358, 298 S.W.2d 838 (1957), cert. den. sub nom., Bruinsma v. Ellis, 354 U.S. 927, 77 S.Ct. 1386, 1 L.Ed.2d 1439; Gorman v. State, 166 Tex.Cr.R. 633, 317 S.W.2d 744 (Tex.Cr.App.1958); Hulsey v. State, supra note 2.

This was a requirement of the former Suspended Sentence Law (Art. 776–781, Vernon's Ann.C.C.P., 1925), but not of the Adult Probation Law. (Art. 42.12, Vernon's Ann.C.C.P.). The fact that an offense has never been formally filed, or if filed, the indictment or other accusatory pleadings have been dismissed, or the fact that the probationer has been charged and acquitted of such offense, before or after the revocation, does not prevent the use of such as the basis for revocation of probation.

And such probationer is not entitled to a jury trial to determine if his probation should be revoked. Art. 42.12, § 8, supra; Hulsey v. State, supra note 2; Dunn v. State, supra note 7.

Further, probation may be revoked for violation of any penal offense; it is not restricted to a violation of a felony or a misdemeanor involving moral turpitude. Jackson v. State, 165 Tex.Cr.R. 380, 307 S.W.2d 809 (1957).

Revocation proceedings are often characterized by their informality, relaxation of rules of admissibility of evidence, absence of jury, etc. If we add to these factors a lesser burden of proof than reasonable doubt, we lay the groundwork for abuse of such proceedings.

Can it really be said that due process, under these circumstances, does not require before deprivation of liberty a reasonable-doubt standard? And if applicable to revocations based on a violation of probationary conditions prohibiting commission of penal offenses, should it not be applicable to all other alleged violations which can just as easily result in deprivation of liberty?

I am not impressed by the majority's mere recitation that revocation proceedings are not trials in the constitutional sense, the judge is the sole trier of the facts, the only question on appeal is abuse of discretion, that the court did not have to grant probation in the first place as if all this somehow properly determines the proper burden of proof in revocation hearings.

"It is one of the misfortunes of the law that ideas become encysted in phrases and thereafter for a long time cease to provoke further analysis." Hyde v. United States, 225 U.S. 347, 391, 32 S.Ct. 793, 811, 56 L.Ed. 1114 (1912) (Holmes, J., dissenting).

And it concerns me that in rejecting the reasonable-doubt standard and in failing to fix any other standard the majority would take into consideration the fear factor that the able trial judges of this state would be less likely to utilize probation. I have more confidence in our trial judges than that. Just how taking this fear factor into consideration commits the majority to the continued viability of our probation laws, but leaves all others with a different viewpoint uncommitted is a question for one to ponder. And should fear of what someone will do or not do govern this court's determination of whether the constitution and laws of the United States and this state require? I should hope not.

I am aware, of course, of the recent 4–3 holding in Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), that *Winship* does not constitutionally require that a trial judge find a confession voluntary beyond a reasonable doubt before admitting it into evidence following a Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing. There the court upheld the Illinois court's use of the "by a preponderance of the evidence" standard. States were left free, however, to adopt a higher standard and many have already done so.[9A] The court noted the petitioner had offered nothing to suggest that admissibility rulings have been unreliable or otherwise wanting in quality because not based on some higher standard than the preponderance standard. I do not read Lego v. Twomey as limiting or undermining *Winship* or calling for a different result than I have reached. We are not here dealing with the burden of proof on an admissibility ruling and far different values are involved.

Surprisingly there have been few cases where the issue here presented has been urged and considered. In State v. Leighty, 5 Wash.App. 30, 485 P.2d 91 (1971), the defendant did raise the same issue and relied upon *Winship*. The Washington Supreme Court rejected the argument outright without discussion and cited cases decided prior to *Winship* to the effect that " . . . [a]ll that is required is that the evidence and facts be such as to *reasonably satisfy* the court that the probationer is 'violating the terms of his probation, . . . ' " 485 P.2d at 92. Such holding without any indepth consideration of *Winship* is not persuasive as far as I am concerned.

Prior to *Winship* a number of courts made similar decisions as to the burden of proof.[10] And since *Winship* other courts have reached the same result rejecting the reasonable-doubt standard without mention

**9A.** See Footnote No. 1 of Lego v. Twomey, supra. While the burden of proof on such admissibility ruling does not appear to have been squarely decided in this state, it has been discussed. See Hill v. State, 429 S.W.2d 481 at 487–488 (Tex.Cr.App. 1968) ; Nash v. State, 477 S.W.2d 557 (Tex.Cr.App.1972). In *Nash*, the trial judge used the reasonable-doubt standard as most Texas judges do.

**10.** e. g., Manning v. United States, 161 F.2d 827, 829 (5th Cir. 1947) ; United States v. Bryant, 431 F.2d 425 (5th Cir. 1970) ; United States v. Langley, 438 F.2d 91 (5th Cir. 1970) ; United States v. D'Amato, 429 F.2d 1284 (3rd Cir. 1970) ; Reinmuth v. State, 163 Neb. 724, 80 N.W. 2d 874 (1957) ; People v. Valle, 7 Misc.2d 125, 164 N.Y.S.2d 67 (Ct.Spec.Sess.1957) ; United States v. Nagelberg, 413 F.2d 708 (2nd Cir. 1970), cert. den. 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970).

of *Winship*.[11] The Illinois courts have consistently held that the burden of proof in their revocation proceedings is by a preponderance of the evidence. None of the cases considered *Winship*.[12]

It is also true that the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Probation § 5.4(a) at 65–67 (Approved Draft 1970), provides that the prosecution " . . . should have the burden of establishing the occurrence of the violation by a preponderance of the evidence. . . . " Here again this standard was adopted prior to and without consideration of *Winship*.

Further, it is significant to me that such standards also recommend that a revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge. See § 5.3 id. This means that the penal offense which forms the basis of the revocation will have first been disposed of in a court of competent jurisdiction in a trial where the burden of proof is beyond a reasonable doubt. This is, of course, not the practice or rule in Texas. See Footnote No. 9 hereof.

And it is to be observed that a new criminal offense is typically the most frequent and serious way in which probationary conditions can be violated. This may well have had a bearing on the adoption prior to *Winship* of a lesser burden of proof than reasonable doubt by such standards.

Those who would espouse the preponderance of the evidence standard would do well to consider what the late Mr. Justice Harlan said in his concurring opinion in *Winship*:

"When one makes such an assessment, the reason for different standards of proof in civil as opposed to criminal litigation becomes apparent. In a civil suit between two private parties for money damages, for example, we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor. A preponderance of the evidence standard therefore seems peculiarly appropriate for, as explained most sensibly, it simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'

"In a criminal case, on the other hand, we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty. . . . "

11. Dickson v. State, 124 Ga.App. 406, 184 S.E.2d 37 (1971); Smith v. State, 11 Md. App. 317, 273 A.2d 626 (1971); Raper v. State, 462 S.W.2d 261 (Tenn.Cr.App. 1970; United States v. Lauchli, 427 F.2d 258 (7th Cir. 1970), cert. den. 400 U.S. 868, 91 S.Ct. 111, 27 L.Ed.2d 108 (1970).

It is true that writ of certiorari was denied in United States v. Lauchli, supra, after the date of *Winship*, but "[d]enial of certiorari, as has frequently been explained, imports nothing as to the merits of the case. All this means is that, for whatever reason, there was not four members of the Court who wished to hear the case." Wright, Federal Courts § 108 at 495 (1970). In Brown v. Allen, 344 U.S. 443, 491–492, 73 S.Ct. 397, 439, 97 L.Ed. 469 (1953), the court wrote:

"Thirty years ago the Court rather sharply reminded the Bar *not* to draw strength for lower court opinions from the fact that they were *left unreviewed here*. 'The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times.' United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361." (Emphasis supplied) See Maryland v. Baltimore Radio Show, 338 U.S. 912, 917–919, 70 S.Ct. 252, 94 L.Ed. 562 (1950) (J. Frankfurter's opinion on denial of certiorari).

12. People v. Majerus, 271 N.E.2d 380 (Ill. App. 1971); People v. Griffin, 270 N.E. 2d 444 (Ill.App.1971); People v. Dawes, 270 N.E.2d 214 (Ill.App.1971); People v. Latham, 270 N.E.2d 563 (Ill.App.1971); People v. Hardnett, 270 N.E.2d 864 (Ill. App.1971); People v. Cook, 53 Ill.App.2d 454, 202 N.E.2d 674 (1964).

Then he added that the requirement of proof beyond a reasonable doubt is "bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free. . . . "

Those who would urge the adoption of a preponderance-of-evidence standard, to paraphrase Mr. Justice Harlan, must be prepared to defend the view that it is no more serious in general to continue a probationer on probation than to revoke probation causing him imprisonment and depriving him of his liberty. See also Mr. Justice Brennan's dissent, Lego v. Twomey, supra.

Further, even in deportation proceedings, the Supreme Court has rejected the preponderance standard and ruled the Government must support its allegations with "clear, unequivocal, and convincing evidence." Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 285, 87 S.Ct. 483, 487, 17 L.Ed.2d 362 (1966). The court noted that deportation is not tantamount to a criminal conviction. The court found it could lead to "drastic deprivations" and that it was impermissible for a person to be "banished from [his] country upon no higher degree of proof that applies in a negligence case."

The revocation of probation involves more than "drastic deprivations."

For the reasons stated above, I would reverse this cause for the failure of the trial court to apply the proper standard of proof —that of reasonable doubt.

Appellant also urges that regardless of the standard of proof utilized, the evidence is insufficient to show that he failed to "avoid persons or places of disreputable or harmful character" in violation of his probation. The amended motion to revoke alleged the disreputable or harmful persons were Jerry Mitchell, Bernie Prachyl and Marion Harper, and the disreputable or harmful place was "611 South Dallas Street, Ennis, Ellis County, Texas."

The record reflects that neither Prachyl or Harper had criminal records or that appellant had personal knowledge that either used marihuana, etc. Mitchell had been convicted of possession of marihuana, but at the time of Mitchell's conviction in Ellis County appellant was in the Army in El Paso or Viet Nam. Further, he knew Mitchell only by name and had never even spoken to him. When the arrest was made, appellant was in the kitchen of the premises eating a piece of cake. None of the named individuals was in the same room and no marihuana was found there or on appellant's person. The majority expresses doubt that the evidence is sufficient to show that he knew the three individuals named in the pleadings were of disreputable or harmful character as required by Jackson v. State, 464 S.W.2d 153 (Tex.Cr.App.1971); Steed v. State, 467 S.W.2d 460 (Tex.Cr.App.1971) and Shortnacy v. State, 474 S.W.2d 713 (Tex.Cr.App.1972). I agree.

The remaining question is whether the evidence shows that the place in question was of disreputable and harmful character. The motion to revoke alleged "611 South Dallas Street in Ennis" while the proof showed that the premises in question were 611½ South Dallas Street, Ennis, a garage apartment occupied by Bernie Prachyl. The evidence, in my opinion, is insufficient to reflect that these particular living quarters bore a bad reputation and that such reputation was known to the appellant and that he did not avoid the same. The majority concludes that since appellant admitted smoking marihuana in Viet Nam, had been convicted of possession of marihuana, he should have somehow detected the odor of marihuana the officers claimed was present in the other room and should have known at that moment the place was harmful to him (since he was on probation) and should have departed before the arrival of the police. I cannot conclude that such evidence was sufficient to reflect a violation of the probationary condition alleged regardless of the standard of proof used.

Appellant also advances the contention that condition of probation allegedly vio-

lated was "indefinite and uncertain." The majority expressly recognizes such contention but, in affirming the conviction, fails to answer the contention. We are left to wonder at their conclusion, if any. The American Bar Association Project on Standards for Criminal Justice, Standards Relating to Probation § 3.2(b), provides that probationary conditions "should not be so vague or ambiguous as to give no real guidance." This suggests the impropriety of imposing conditions which achieve such a level of generality as to be of no particular value. All such conditions should be explicit primarily as an aid to the offender in increasing his understanding of what is expected of him.

In this same connection, I do note, in passing, that the judgment entered simply reflects: "Imposition of sentence suspended. Defendant placed on probation for said time in accordance with the provisions of Article 42.12 of the Texas Code of Criminal Procedure." No conditions of probation were set out in the judgment nor is there to be found a separate order granting probation or any other instrument or entry setting forth the probationary conditions. The first mention of any probationary condition imposed is found in the motion to revoke.

When a defendant is granted probation there are no automatic conditions thereby imposed. The trial judge must decide what conditions are to be imposed. Article 42.12, § 6, Vernon's Ann.C.C.P. And this is true whether the trial judge grants probation, as in the instant case, or whether probation is recommended by the jury. In the latter situation, the trial judge is limited to those conditions suggested in the statute, but he is certainly not required to impose all of them. This court has repeatedly held it incumbent upon the trial judge to incorporate in his order or judgment granting probation the conditions upon which the accused was

being released " . . . so that the accused and the authorities may know, with certainty, what those conditions are." Ex parte Pittman, 157 Tex.Cr.R. 301, 248 S.W.2d 159, 165 (1952).[13]

In addition to the absence of anything in the record to show what conditions, if any, were imposed by the trial judge, the record fails to reflect a compliance with § 6 of Art. 42.12, supra, which requires the clerk to furnish a copy of the terms and conditions to the probationer and note the delivery of the same upon the docket of the court. See McShan v. State, 458 S.W.2d 78 (Tex.Cr.App.1970).

For the reasons stated, I would reverse this conviction finding an abuse of discretion.

13. Accord, e. g., McDonald v. State, 442 S.W.2d 386 (Tex.Cr.App.1969); Stover v. State, 365 S.W.2d 808 (Tex.Cr.App. 1963); Glenn v. State, 168 Tex.Cr.R. 312, 327 S.W.2d 763 (1959); McBee v. State, 166 Tex.Cr.R. 562, 316 S.W.2d 748 (1958). See also Walls v. State, 161 Tex.Cr.R. 1, 273 S.W.2d 875 (1954).