Teddy Joe McDONALD, Appellant,

v.

The STATE of Texas, Appellee.

No. 61189.

Court of Criminal Appeals of Texas,
Panel No. 1.

April 23, 1980.

On Rehearing Nov. 26, 1980.

Lane Arthur, Lubbock, for appellant.

John T. Montford, Dist. Atty., and Jim B. Darnell, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and CLINTON, JJ.

OPINION

CLINTON, Judge.

This is an appeal from an order revoking probation followed by imposition of sentence for the original offense. The most serious problem that confronts us arises from a variation on the *Barrientez*[1]–*Bradley*[2] theme[3] of a new form of judicial notice. That is, a trial court hearing a motion to revoke probation may judicially notice evidence admitted by the court in a prior trial of the primary offense to determine

---

1. *Barrientez v. State*, 500 S.W.2d 474 (Tex.Cr. App.1973).

2. *Bradley v. State*, 564 S.W.2d 727 (Tex.Cr. App.1978).

3. It was also orchestrated in *Stephenson v. State*, 500 S.W.2d 855 (Tex.Cr.App.1973); *O'Hern v. State*, 527 S.W.2d 568 (Tex.Cr.App. 1975); *Green v. State*, 528 S.W.2d 617 (Tex.Cr. App.1975) and most recently in *Cleland v. State*, 572 S.W.2d 673 (Tex.Cr.App.1978).

whether the motion is supported by a preponderance of the evidence—if the same trial judge presided over both proceedings and, perhaps, the accused was represented by the same counsel.[4]

The case we now review is on a record that contains what *Bradley* ordered reproduced: the certified and approved transcription of the court reporter's notes of testimony and other evidence at the former trial of the primary offense which, just like Bradley's, was mistried due to a hung jury. We are thus able now to examine what the Court in *Bradley* could not and to date has not.[5] And with this record we must address what most certainly is a question of first impression in the *Barrientez–Bradley* doctrine. The setting is accurately described by the trial court in the course of the revocation hearing and after overruling appellant's objections to the prospective procedure:[6]

"THE COURT: All right. The objection will be overruled.

Let the record show that this Court heretofore on September 11th and September 12th, 1978, presided over Case No. 18686 styled The State of Texas versus Teddy Joe McDonald wherein it was alleged that Mr. McDonald committed the offense of burglary of a habitation alleged to have been committed on the 8th day of May of 1978 and that a jury was impaneled; the evidence was heard by the jury and the Court.

That the Defendant was very ably represented by Mr. David Bass, a practicing attorney who is now present with the Defendant in this hearing.

And that the jury could not arrive at a verdict and after being out some three to four hours, reported that they were hopelessly deadlocked and could not reach a verdict by deliberating any longer, at this time this Court declared a mistrial; and that the case is now still pending.

Let the record further show that I was present at all times and heard all of the evidence that is now being introduced and am aware and acquainted with the testimony and have before me now my notes taken, as well as the docket sheet, reflecting all of the happenings.

And with that, an offer of all the entire testimony will be received by this Court over the objection of the Defendant; and he has his exception.

(Thereupon the entire testimony in Cause No. 18,686 styled State of Texas vs. Teddy Joe McDonald was marked State's Exhibit No. 1 for identification and received in evidence and said Q & A Statement of Facts is included in this Record on Appeal on the pages as indicated in the index hereof.)"

---

4. Cf. *Barrientez*, supra, in which that feature is not noted, with *Stephenson*, supra, in which it pointedly is; see *O'Hern*, supra, where sameness of counsel was spotted by Presiding Judge Onion; see *Green*, supra, where that factor is not alluded to by the majority; but, because admitted on oral argument to be true, persuaded concurring Judge Roberts that "requirements of *Barrientez* ... are thus satisfied;" and caused Presiding Judge Onion to despair in dissent that *Barrientez* was being extended to the situation where "the judge and defense counsel were the same at both proceedings," 528 S.W.2d at 620. In *Bradley*, supra, the majority did not "waiver from our firm adherence" to *Barrientez* and, accordingly, did not mention defense counsel; Judge Dally concurred with a suggested procedure that would practically assure sameness; Presiding Judge Onion read cases following *Barrientez* to make clear that "counsel should be the same," 564 S.W.2d at 736; Judge Douglas was satisfied the Court was still following *Barrientez*, 564

S.W.2d at 737; like Presiding Judge Onion, Judge Phillips would overrule *Barrientez*, 564 S.W.2d at 740. See also *Cleland*, supra, in which there being but a single proceeding counsel was necessarily the same.

5. For the understandably curious we report that after the appeal in *Bradley* was abated for reproduction of testimony in Cause No. F-76-1545-NJ there was prepared and transmitted to the Clerk of this Court a record of the testimony in Cause No. F-76-1545 LJ. In a per curiam opinion delivered November 8, 1978, the Court again abated the appeal to obtain the testimony in the cause the trial court identified as the one being judicially noticed, 573 S.W.2d 30.

6. Appellant objected to admission of the exhibit as a denial of effective cross-examination and confrontation of witnesses and due process of law.

Neither that statement by the trial court nor the record reveals precisely what it was that caused the jury to be "hopelessly deadlocked and could not reach a verdict by deliberating any longer," but the parties practically agree that the problem was the credibility of the principal witness presented by the State. Thus, appellant contends that the case for the State "rested heavily upon the testimony of probationer Troy Marshall," which he then proceeds to dissect and points to inconsistencies, fabrications and contradictions that rendered it "demonstrably unreliable and self–serving." So much the State concedes for it says:

> "As the Appellant's brief points out, the witness Marshall was the subject of much impeachment during the course of the trial. This attack on his credibility *no doubt* played an *important part* in the jury's failure to reach a verdict."

But, the State hastens to add, "Nevertheless, at a probation revocation hearing it is the trial judge who is the sole trier of fact and *must weigh the credibility of the witnesses.*" Exactly, and therein we believe lies the slender constitutional issue that is nicely presented in this case through an unblinking application of the *Barrientez–Bradley* doctrine.

> "(I)t is well established that revocation of probation hearings are a part of the criminal law process 'where substantial rights of a criminal accused may be affected' and to which federal constitutional standards are applicable," *Stephenson*, supra, 500 S.W.2d at 858–859 (Dissenting opinion of Presiding Judge Onion).[7]

Just as federal standards are, so also are the requisites and protections of the Consti-

tution of the State of Texas applicable to probation revocation hearings. Though the hearing is not a trial in the constitutional sense, *Bradley*, supra, in Texas it clearly is held in the context of our criminal process, *Campbell v. State*, 456 S.W.2d 918, 921 (Tex.Cr.App.1970) and, implicating as it does substantial rights and serious deprivation of conditional liberty, *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972), *Gagnon v. Scarpelli*, 411 U.S. 778, 781–782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973), the proceeding is constrained by the "due course" clause of Article I, § 19 of the Bill of Rights,[8] if not by the "rights of accused" vouchsafed in Article I, § 10. The substantial interests here are as perceived in *Gagnon v. Scarpelli*, supra, 411 U.S. at 785, 93 S.Ct. at 1761:

> "Both the probationer . . . and the State have interests in *the accurate finding of fact* and the *informed* use of discretion—the probationer . . . to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community."

Thus it is that *Morrissey v. Brewer*, supra, laid down "minimum requirements of due process" that were reaffirmed in *Gagnon v. Scarpelli*, supra, 411 U.S. at 786, 93 S.Ct. at 1762 to "serve as substantial protection against ill–considered revocation," *id.*, including "a written statement by the fact–finders as to *the evidence relied on*" and reasons for revoking probation.[9]

In pronouncing its order of revocation the trial court stated:

---

**7.** Cited are the authoritative opinions in *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *McConnell v. Rhay, Stiltner v. Rhay*, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968); *Crawford v. State*, 435 S.W.2d 148 (Tex.Cr.App.1968); *Eiland v. State*, 437 S.W.2d 551 (Tex.Cr.App.1969).

**8.** Section 19 provides in pertinent part, "No citizen of this State shall be deprived of . . . liberty . . . except by due course of the law of the land." Early on, agreeably with Mr. Cooley, the language was held to mean "the general law; a law which hears before it condemns, which proceeds upon inquiry and renders judg-

ment only after trial," *Huntsman v. State*, 12 Tex.App. 619 (1882). See also *Bumguardner v. State*, 147 Tex.Cr.R. 188, 179 S.W.2d 768, 770 (Tex.Cr.App.1944).

**9.** In *Wilcox v. State*, 477 S.W.2d 900, 902 (Tex. Cr.App.1972) the Court was disadvantaged by failure of the trial court "to make findings as to basis of the revocation" and has since commended the practice of "reciting specific findings in orders revoking probation," *Guillory v. State*, 487 S.W.2d 327, 330, n. 1 (Tex.Cr.App. 1972), that it required in, e. g., *Wozencraft v. State*, 388 S.W.2d 426 (Tex.Cr.App.1965), after strongly suggesting it in *McBee v. State*, 166

"THE COURT: All right. It will be the order of the Court that the probationer Teddy Joe McDonald did violate the terms and conditions of his probation in that he did on the 8th day of May of 1978 in Lubbock County, Texas commit the offense of burglary as alleged in the Application to Revoke; the same being the burglary of the habitation of Paul McLaughlin. And that the probation was in effect and in force at the time of the commission of the offense.

The Court finds by a preponderance of the evidence as heard and reintroduced in this cause that he did commit the offense against the laws of this or any other state or the United States and therefore he has violated his probation and that the probation is hereby revoked, and the Defendant is hereby—judgment is hereby entered that the Defendant be committed to the Texas Department of Corrections for a period of 10 years and that the State have any and all costs for which let execution issue."

Its written order reiterated in more formal terms substantially the oral pronouncement.[10]

What is not revealed by these recitations or by anything else in the record is that which we find is the crucial question in the case: Having taken judicial notice of all the testimony and evidence adduced on the former trial,[11] how did the trial court regard and treat the testimony of Troy Marshall, the principal witness for the State at trial, in finding by a preponderance of the evidence that appellant had in fact committed the offense charged in the motion to revoke?

Without an answer to the question, we do not know and cannot know whether the trial court accepted all or part of the testimony of Marshall or rejected it as unreliable and believed other evidence sufficient to make a preponderance. It will not do, as does the dissent, merely to say "it was for the trial judge independently to weigh the credibility of the witnesses." As a reviewing Court addressing the central issue in this revocation matter—whether the trial court abused its discretion in making and entering the order that it did—we must know what weight, if any, was given to the trial testimony of Marshall.

Accordingly, on the thin issue that is critical to our review in this unique setting, we

Tex.Cr.R. 562, 316 S.W.2d 748 (1958). But then the Court has also blunted the thrust of its mandate by imposing on the appellant the necessity of making a request for "specific findings in the order revoking probation" before failure to make them becomes reversible error. See *Clapper v. State*, 562 S.W.2d 250, 251 (Tex. Cr.App.1978); *Rodriguez v. State*, 552 S.W.2d 451, 456 (Tex.Cr.App.1977); *Lucero v. State*, 502 S.W.2d 128, 130 (Tex.Cr.App.1973). *Lucero*, supra, both pointed to "the better practice" and viewed the failure to request findings but opted for neither, concluding, "Under the circumstances of *this particular case*, it would be difficult to say the appellant was misled," 502 S.W.2d at 130. In short, the dictum has never been elevated to constitutional level. In the instant case, however, it is.

10. "And it appearing to the Court, after a hearing was had and the testimony heard, that Defendant, TEDDY JOE McDONALD, had violated the conditions of said probation, to–wit:
(a) On or about the 8th day of May, A.D. 1978, in Lubbock County and State of Texas, and after having been heretofore placed on probation, Probationer did then and there

without the effective consent of Paul McLaughlin, the owner thereof, enter a building not then and there open to the public, and that said building was then and there a habitation occupied by the said Paul McLaughlin, with intent to commit theft, to–wit: with intent then and there to appropriate property unlawfully from Paul McLaughlin, without the effective consent of Paul McLaughlin, the owner of said property, and with intent to deprive the said owner of said property.
 And that such violations of the terms of said probation occurred within the probationary term as heretofore set out in this cause;
 NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the probation heretofore ordered, set out and granted to the Defendant, TEDDY JOE McDONALD, is in all things revoked..."

11. We understand the trial court noticed these matters through its use of notes and docket sheet entries personally made, as opposed to the transcription of the notes of the court reporter which apparently was not actually produced until some six weeks after probation had been revoked.

hold [12] that a trial court which takes judicial notice of all testimony and other evidence admitted before a jury in a former trial of the primary offense that is mistried, because the jury deadlocked ostensibly over credibility of the principal witness presented by the State, is required by the Due Process and Due Course clauses to make specific findings concerning its acceptance or rejection of any testimony given by and credibility of the principal witness, and include them in its order revoking probation.

Therefore, because those findings were not made in this case, we cannot conclude that the order revoking probation is supported by a preponderance of competent evidence, and it is set aside and the cause remanded.

It is so ordered.

ONION, Presiding Judge, concurring.

I concur only in the result reached by Judge Clinton—reversal of this cause. I would reverse because there was no proper evidence before the court to justify the revocation of probation. In my view the trial court could not have taken judicial notice of the testimony given in a prior trial and have used the same as the basis of a revocation of probation. See my dissenting opinions in *Barrientez v. State*, 500 S.W.2d 474 (Tex.Cr.App.1973); *Stephenson v. State*, 500 S.W.2d 855 (Tex.Cr.App.1973); *Green v. State*, 528 S.W.2d 617 (Tex.Cr.App. 1975); *Bradley v. State*, 564 S.W.2d 727 (Tex.Cr.App.1978).

In *Scott v. Clark*, 38 S.W.2d 382 (Tex.Civ. App.–Austin, 1931), it was held that, while a court may take judicial notice of its own orders in a previous hearing between the same parties on the same subject, the court cannot take judicial notice of the testimony heard before him on another trial and enter independent judgment thereon. See also Texas Practice, 1 McCormick and Ray, 2nd Ed., Evidence, § 152, 172, and cases cited in the dissenting opinion in *Barrientez.*

The so–called "judicial notice" artificially fashioned in *Barrientez* was not judicial notice as known to the field of law. In devising the new rule, the majority simply borrowed the name for convenience and to put a stamp of approval on still another short-cut in revocation proceedings. In *Bradley* this writer in dissenting wrote:

"The chickens hatched by *Barrientez v. State*, 500 S.W.2d 474 (Tex.Cr.App.1973), are coming home to roost. Instead of putting an end to the mounting problems created by *Barrientez* and its progeny by overruling *Barrientez*, the majority warmly embraces this erroneous rule, and in an apologia, seeks to shore up the rule in the light of the circumstances of the instant case. It abates the appeal to allow the State to supplement the record by including the testimony from a prior trial record of which the trial judge took 'judicial notice' in this revocation proceeding but which was never included in the record in the first place. The State is thus allowed to re–open its case and to correct its mistake by abatement of appeal."

While the record of the testimony of the prior trial and of which "judicial notice" was taken in the instant case is in the appellate record, Judge Clinton would reverse because the trial judge did not make specific findings in his order revoking probation concerning his acceptance or rejection of any or all of the principal witness' testimony or of the witness' credibility where in the prior trial, which resulted in a mistrial, the jurors ostensibly deadlocked over the credibility of the State's principal witness.

In the past the majority of this court has argued that the so–called *Barrientez* rule of "judicial notice" was designed for judicial convenience and economy in revocation proceedings. Given *Bradley* and the instant

**12.** Given the diversity of views expressed by other members of this panel what is stated in the accompanying text is not, of course, a "holding" by the Court. Furthermore, the "holding" assumes that the *Barrientez–Bradley* form of judicial notice remains viable–an assumption to which the writer has not yet committed but is willing to accept for purposes of this opinion.

case and the delays in the finality of revocation of probation now inherent under the *Barrientez* rule, one may well wonder how much longer it will take for the majority to realize the rule was ill–conceived in a number of ways. Revocation of probation proceedings are not complex or difficult legal proceedings. Evidence may be produced by calling witnesses, by stipulations (which frequently occur when there has been a prior trial and where the offense involved in such prior trial is the basis of the revocation motion and the trial judge and defense counsel are the same), by an agreed statement of facts, etc. It was never a real problem before *Barrientez*. If the majority of this court will not reconsider the *Barrientez* rule, perhaps our trial judges will avoid imposing upon this overburdened court any other questions under the *Barrientez* rule by refusing to use the "judicial notice" artificially fashioned in *Barrientez*.

For the reasons stated, I concur in the reversal.

ROBERTS, Judge, dissenting.

There are three judges on this panel. No two of them agree that any ground of error which has been raised requires reversal. The judgment should not be reversed.

In the first ground of error the appellant challenges the propriety of a judge taking judicial notice in a revocation proceeding, of the evidence that he heard in the probationer's earlier trial. This form of judicial notice was recognized in *Barrientez v. State*, 500 S.W.2d 474 (Tex.Cr.App.1973). It was approved, with the provision that the record should reflect clearly the facts from the earlier trial that were judicially noticed, in *Bradley v. State*, 564 S.W.2d 727 (Tex.Cr.App.1978). The appellant simply repeats the arguments that were advanced and rejected in those cases and in *Green v. State*, 528 S.W.2d 617 (Tex.Cr.App.1975); *O'Hern v. State*, 527 S.W.2d 568 (Tex.Cr.App.1975); and *Stephenson v. State*, 500 S.W.2d 855 (Tex.Cr.App.1973). See also *Cleland v. State*, 572 S.W.2d 673 (Tex.Cr.App.1978); *Haile v. State*, 556 S.W.2d 818 (Tex.Cr.App. 1977); *Bailey v. State*, 543 S.W.2d 653 (Tex. Cr.App.1976). Judge Onion has vigorously

dissented, but his dissents have never commanded a majority and they do not do so today.

In his second ground of error, the appellant claims that the evidence was insufficient. He points out that, in the trial of the same offense, the jury hung. He claims that the reason the jury hung was that the credibility of the State's primary witness was impeached. (The witness was also on probation, and he was shown to have uttered some falsehoods out of court, such as giving a false address to the police.)

The appellant's claim fails to consider the importance of a different finder of fact and a different burden of proof. The jury could have hung if one member found that the State's evidence had not removed all reasonable doubts. For the purposes of the probation revocation, it was for the trial judge independently to weigh the credibility of the witnesses, and he had to be persuaded only by a preponderance of the evidence. Viewing the evidence in the light most favorable to the appellee, as we must, I find it sufficient to support the judge's exercise of discretion.

This claim does not persuade more than one judge, and it is not supported by law.

The only remaining claim is that it was an abuse of discretion to revoke probation when the appellant showed that he had complied with all the other conditions of probation except the one that required him to commit no offense against the law. To put it mildly, the commission of a felony of the first degree is sufficient reason for revoking probation, no matter how well a probationer may be behaving otherwise.

Obviously the panel cannot agree on any principle of law which requires reversal. Yet the judgment is being reversed by the accumulation of two disparate votes. I dissent.

Before the court en banc.

OPINION ON STATE'S MOTION
FOR REHEARING

W. C. DAVIS, Judge.

This is an appeal from an order revoking appellant's probation. On September 20,

1977, the appellant was convicted for the offense of burglary and he received a ten year probated sentence. Appellant's probation was revoked on September 19, 1978, and on the 28th of September, 1978, the appellant was sentenced.

The case is one where the trial court, at the hearing on State's Motion to Revoke, took judicial notice of the proceedings which occurred at appellant's trial for burglary four days earlier. At the hearing, the trial court overruled the appellant's objection to the taking of judicial notice, and stated,

"Let the record show that this Court heretofore on September 11th and September 12th, 1978, presided over Case No. 18686 styled The State of Texas versus Teddy Joe McDonald wherein it was alleged that Mr. McDonald committed the offense of burglary of a habitation alleged to have been committed on the 8th day of May of 1978 and that a jury was impaneled; the evidence was heard by the jury and the Court.

That the Defendant was very ably represented by Mr. David Bass, a practicing attorney who is now present with the Defendant in this hearing.

And that the jury could not arrive at a verdict and after being out some three to four hours, reported that they were hopelessly deadlocked and could not reach a verdict by deliberating any longer, at this time this Court declared a mistrial; and that the case now still pending.

Let the record further show that I was present at all times and heard all of the evidence that is now being introduced and am aware and acquainted with the testimony and have before me now my notes taken as well as the docket sheet, reflecting all of the happenings.

And with that, an offer of all the entire testimony will be received by this Court over the objection of the Defendant; and he has his exception."

The transcription of the trial proceedings appear in the record on appeal. Judicial

notice was properly taken under the authority of *Broussard v. State*, 598 S.W.2d 873 (Tex.Cr.App.1980); *Bradley v. State*, 564 S.W.2d 727 (Tex.Cr.App.1978); *O'Hern v. State*, 527 S.W.2d 568 (Tex.Cr.App.1975); *Green v. State*, 528 S.W.2d 617 (Tex.Cr.App. 1975); *Barrientez v. State*, 500 S.W.2d 474 (Tex.Cr.App.1973).

On original submission, the three judge panel issued three disparate opinions. In the 1–1–1 "decision", Judge Clinton held that the order revoking probation was not supported by competent evidence because the trial court did not submit for this Court's benefit, its findings concerning the weight and effect that it had given to the testimony of the "principal witness" in determining the sufficiency of the evidence. The panel opinion stated,

"It will not do, as does the dissent, merely to say 'it was for the trial judge independently to weigh the credibility of the witnesses.' As a reviewing Court addressing the central issue in this revocation matter—whether the trial court abused its discretion in making and entering the order that it did—we must know what weight, if any, was given to the trial testimony of Marshall.

Accordingly, on the thin issue that is critical to our review in this unique setting, we hold that a trial court which takes judicial notice of all testimony and other evidence admitted before a jury in a former trial of the primary offense that is mistried, because the jury deadlocked ostensibly over credibility of the principal witness presented by the State, is required by the Due Process and Due Course clauses to make specific findings concerning its acceptance or rejection of any testimony given by and credibility of the principal witness, and include them in its order revoking probation." (Footnote omitted)

 At the conclusion of the revocation hearing, the trial court stated its findings and entered the same in the written order revoking appellant's probation.[1]

---

1. The order recites:
 "And it appearing to the Court, after a hearing was had and the testimony heard,

that Defendant, TEDDY JOE McDONALD, had violated the conditions of said probation, to wit:

These findings by the trial court are sufficient. The appellant did not request further findings or clarification at the hearing, nor does he complain that he was denied these findings on appeal. See *Rodriquez v. State*, 552 S.W.2d 451 (Tex.Cr.App.1977); *Valdez v. State*, 508 S.W.2d 842 (Tex.Cr. App.1973); *Sappington v. State*, 508 S.W.2d 840 (Tex.Cr.App.1974). Regarding the concern expressed in panel opinion as to the jury being deadlocked "ostensibly over credibility of the principal witness," we note that the record reflects merely that the jury was deadlocked. Whatever the reason, the fact that the jury could not reach a verdict in the prior trial has no bearing on the proceeding which is now before this Court. In a criminal trial, the jury is required to find the accused guilty beyond a reasonable doubt in order to convict; in a revocation of probation proceeding, the State must prove a violation by the probationer by a preponderance of the evidence. See *Kelly v. State*, 483 S.W.2d 467 (Tex.Cr.App.1972). The appellant's probation was revoked after it was determined by the trial court that the appellant had *committed* an offense, not that he had been *convicted* for an offense. See *Bradley v. State*, supra, at 730. See also *Beck v. State*, 492 S.W.2d 536 (Tex.Cr. App.1973). Thus, the fact that the jury was unable to reach a verdict at appellant's trial for the offense which was subsequently used to revoke his probation, is inconsequential to this appeal. Appellate review of revocation of probation proceedings is limited to a determination of whether the trial court abused its discretion. *Fronatt v. State*, 543 S.W.2d 140 (Tex.Cr.App.1976). In such a proceeding, the trial court is the sole trier of the facts, the credibility of the witnesses and the weight to be given their testimony. *Fronatt v. State*, supra; *Gonzales v. State*, 508 S.W.2d 388 (Tex.Cr.App. 1974). *Beck v. State*, supra. The failure of the trial court to include unsolicited findings as to who or what it believed or disbelieved and why does not render the evidence insufficient, nor does it call for a reversal of the court's order. The State's Motion for Rehearing is granted.

■ In ground of error one, appellant attacks the sufficiency of the evidence. The State alleged in its Motion to Revoke that appellant violated the conditions of his probation by committing the offense of burglary. The trial court took judicial notice of Troy Marshall's testimony. Marshall testified that on May 8, 1978, he and appellant went to a pawn shop where appellant pawned a watch. Marshall stated that he returned to the pawn shop with appellant on the 11th of May. The witness stated that appellant went to the pawn ship to pawn more merchandise and to pick up the watch that appellant pawned earlier. Marshall testified that the appellant told him he needed to pick up the watch because it was taken from a burglary. Marshall's statement to the police, which was introduced into evidence, recites:

"I wish to state that Monday, 5–8–78, Delmore Kennum told me that last Saturday night someone called him at the Auction and asked for Paul Mclaughlin (sic). Delmore told the caller that Paul was out of town, and Delmor didn't know who the caller was. Delmor told me that Paul's house had also been broke in to and said I guess I really fixed him up, didn't I? Later that same day I was at Daniel

(a) On or about the 8th day of May, A.D. 1978, in Lubbock County and State of Texas, and after having been heretofore placed on probation, Probationer did then and there without the effective consent of Paul McLaughlin, the owner thereof, enter a building not then and there open to the public, and that said building was then and there a habitation occupied by the said Paul McLaughlin, with intent to commit theft, to-wit: with intent then and there to appropriate property unlawfully from Paul McLaughlin, without the effective consent of Paul McLaughlin, the owner of said property, and with intent to deprive the said owner of said property.

And that such violations of the terms of said probation occurred within the probationary term as heretofore set out in this cause;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the probation heretofore ordered, set out and granted to the Defendant, TEDDY JOE McDONALD, is in all things revoked . . ."

Lunde's house on 32nd St. It was about 7:00 pm when Daniel showed me a Colt 38 Cal. pistol. It was black with black plastic handles with Colt written on them. The barrel was about five inches long. Teddy Joe McDonald was present in the room at this time he stated that he had called the Auction and found out that Paul McLaughlin was out of town and that he and Daniel Lunde had went and broke into Paul's house. Earlier on 5–8–78 at about 4:00 pm I went to a pawn shop on 4th st at about Uvalde with Teddy Joe and he pawned a silver pocket watch which he told me was his grandfather's. On Thursday, 5–11–78 Teddy Joe, Barbara Grantham and I went back to the same pawn shop where Teddy Joe sold a TV, a TV Game, a clock radio and a snake statue to a heavy set guy with a moushtache. Teddy Joe did not get a receipt for these items. At this time he also tried to pickup the watch he had pawned Monday, but he didn't have the pawn ticket or any identification so the man wouldn't give it to him. When we left Teddy Joe said he needed to pickup the watch because it came from the burglary. At this time he also said he had taken the rest of the jewelry from the burglary and threw it on top of his apartment house but it came down, so he threw it in the alley behind his building. He had said he had gotten a couple of rings and three or four other watches, and I guess this is what he threw away. The day after Daniel Lunde showed me the pistol he said he had sold it for dope. I can read and write the English language and have completed the eleventh grade in school."

On cross–examination, it was shown that the witness was on felony probation for burglary.

Next, Scotty Flowers, owner of the pawnshop, testified that the appellant brought in a pocket watch, which was shown to have been stolen in the burglary. Flowers stated that the appellant used the name "James Bill Petty" when he pawned the watch for $15. We find the evidence sufficient to sustain the order revoking probation.

 In ground of error two, the appellant claims that the trial court abused its discretion in revoking appellant's probation because it was shown that appellant was living up to six conditions of his probation and was making a valuable contribution to society. Evidence which supports a finding that the appellant violated one condition of his probation is sufficient to sustain the order revoking probation. The ground of error is overruled.

Finally, appellant's contention that the trial court erred by taking judicial notice of appellant's trial is overruled. See *Broussard v. State*, supra; *Cleland v. State*, 572 S.W.2d 673 (Tex.Cr.App.1978); *Bradley v. State*, supra; *O'Hern v. State*, supra; *Barrientez v. State*, supra.

The judgment is affirmed.

DALLY, J., concurs in the result.

ONION, P. J., and CLINTON, J., dissent.