# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00567-CR

**Talvin Edward Christion, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. 00-5162, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Talvin Edward Christion appeals an order revoking his probation (community supervision).[1]  In a bench trial on September 7, 2000, appellant entered a plea of guilty to an indictment charging him with possession of cocaine less than one gram.  The trial court found appellant guilty and assessed his punishment at two years' imprisonment.  The imposition of the sentence was suspended and appellant was placed on probation for four years subject to certain conditions.

---

[1]  The terms "probation" and "community supervision" are used interchangeably.  *See Rodriguez v. State*, 939 S.W.2d 211, 220 & n.12 (Tex. App.—Austin 1997, no pet.).  The current statute, Tex. Code Crim. Proc. Ann. art. 42.12 (West Supp. 2004), generally refers to the procedure as "community supervision."  The only constitutional basis for the statutory community supervision procedure is article IV, section 11A of the Texas Constitution, which only refers to the procedure as "probation."

On July 24, 2002, the State filed a motion to revoke probation alleging that (1) appellant failed to report to the probation officer as instructed on June 15, 2001 and the second Wednesday of each month thereafter; (2) appellant failed to submit to T.A.I.P. (Texas Commission on Alcohol and Drug Abuse - Treatment Alternative to Incarceration Program) for screening; and (3) appellant committed a subsequent offense of robbery on February 24, 2002, all in violation of his probationary conditions.

On October 14, 2002, a revocation hearing was conducted. At the conclusion of the hearing, the trial court found appellant had violated his probationary conditions as alleged, revoked probation, and sentenced appellant to two years' imprisonment.

## Point of Error

Appellant claims that the trial court abused its discretion in revoking probation. This is the sole point of error. We will affirm the order of revocation.

## Revocation Hearing

McQuetta Dabrey, a Travis County probation officer, testified that appellant had been placed on probation in September 2000; that on June 15, 2001, and thereafter, appellant "absconded" and did not report to her or the probation office just as he had "absconded" earlier in November 2000.[2] Dabrey also related that appellant failed to appear for alcohol and drug screening and evaluation on the dates she had prescribed for him.

---

[2] The trial court explained for the record that "they" mean "failure to report" as required when the term "abscond" is used.

Augustin Garcia, who was raised in Mexico and had been in Texas for three years, testified that on February 24, 2002, he was driving a pickup truck near the intersection of Airport Boulevard and Gunter Street in Austin. Garcia explained that a car suddenly pulled in front of his truck and he hit the left rear of the car. Two men got out of the car, one wearing glasses and a flowered shirt, and the other wearing a blue shirt. As the subsequent evidence reflects and as appellant agrees in his brief, the first man out of the car was Michilio Rankin, appellant's cousin, and the man in the blue shirt was appellant. Garcia stated the two men were yelling and cursing him. They demanded his driver's license and car insurance. Garcia told them that he had no driver's license, but the "insurance" was in the truck. At this time, Rankin began hitting Garcia in the face and yanked a gold chain off Garcia's neck. Appellant then joined in the assault and unsuccessfully attempted to remove Garcia's silver identification bracelet from his wrist. After the men knocked out two of Garcia's teeth, Garcia was able to get into his truck and drive two blocks. The police were called. Garcia was taken to the hospital in an ambulance.

David Campos was driving behind the Cadillac automobile that was hit by Garcia's truck. He stated that "it was no big accident." Campos generally corroborated Garcia's testimony as to what occurred. Campos saw Rankin get out of the Cadillac "like a madman," cursing and asking to see proof of insurance. To Campos, Garcia appeared scared and unable to understand the English Rankin was using. Campos heard Rankin demand the truck keys from Garcia, claiming that the truck belonged to him (Rankin). The other man (identified as appellant) came up, began yanking on Garcia, trying to take something away from Garcia, and also trying to get into Garcia's pockets. Campos reported that Rankin threw the first punch and was beating the "hell" out of Garcia, who had his hands in his pockets or covering his face. Garcia was finally able to escape in the truck.

3

Campos called the police and followed Garcia for half a mile before Garcia stopped. He found Garcia bleeding.

Appellant testified in his own behalf. He acknowledged that early on he quit reporting to the probation officer when he left Texas for Atlanta, Georgia, without permission because his mother needed his help as she was "almost homeless." His mother died in a traffic accident on May 4, 2001. When it was pointed out that he was charged with failing to report to the probation officer on and after June 15, 2001, appellant referred back to his mother's problems and indicated that he had "given up" on the required reporting. Appellant also acknowledged that he had not reported for drug screening at T.A.I.P. as required because the probation officer knew at the time that his system was not fully clear of marihuana.

Appellant gave a different version of the car accident involving Garcia. Appellant stated that after the accident, his cousin, Mic Rankin, and Garcia got into an argument and then a fight. Appellant revealed that he stepped between the two men to break up the fight; that he pushed Rankin away and then pushed Garcia back. Garcia then hit him. Appellant, who was raised as a boxer, gave Garcia a "combination"—two to five punches. In his struggle with Garcia, the gold chain got wrapped around appellant's hands and was ripped off Garcia's neck. Appellant did not know what happened to the chain thereafter. He denied trying to take Garcia's watch or silver bracelet. He claimed that he had acted in self-defense.

### Standard of Review

The standard of review is whether there has been an abuse of discretion by the trial court in revoking probation. *Jackson v. State*, 645 S.W.2d 303, 305 (Tex. Crim. App. 1983); *Lopez*

4

*v. State*, 46 S.W.3d 476, 481 (Tex. App.—Fort Worth 2001, pet. ref'd). In revocation hearings, the trial court is the sole trier of fact and the judge of the credibility of the witnesses and the weight to be given their testimony. *McDonald v. State,* 608 S.W.2d 192, 199 (Tex. Crim. App. 1980); *Battle v. State*, 571 S.W.2d 20, 22 (Tex. Crim. App. 1978). The trial court may accept or reject any or all of the testimony of any witness in a revocation hearing. *See Williams v. State*, 635 S.W.2d 214, 215 (Tex. App.—Fort Worth 1982, pet. ref'd).

In order to prevail at a revocation hearing, the State must prove a violation of probation as alleged in the revocation motion. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1998); *Lopez*, 46 S.W.2d at 481. The burden of proof is by a preponderance of evidence in a revocation of probation proceeding. *See Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974); *see also Cobb*, 851 S.W.2d 873; *Battle*, 571 S.W.2d at 22; *Lopez*, 46 S.W.3d at 481. Proof of a single violation of probationary conditions is sufficient to support revocation of probation. *O'Neal v. State*, 623 S.W.2d 660, 661 (Tex. Crim. App. 1981); *Meyers v. State*, 780 S.W.2d 441, 445 (Tex. App.—Texarkana 1989, pet. ref'd).

**Discussion**

The probation officer testified that appellant had not reported to her as required on or after June 15, 2001. This testimony alone would be sufficient to support revocation if accepted by the trial court. *See Hendley v. State*, 783 S.W.2d 750, 752 (Tex. App.—Houston [1st Dist.] 1990, no pet.). Appellant stated that while on probation he left Texas without permission to attend to his mother's needs in Georgia, and thereafter that he had "given up" on reporting to the probation officer. The probation officer also related that appellant failed to appear for drug screening as

required. Appellant acknowledged that he had not submitted to drug testing for reasons earlier stated.

The State's evidence further showed that appellant participated in the robbery of Augustin Garcia. Appellant denied taking the gold chain but claimed self-defense while trying to quell a fight. As trier of the facts, the trial court was free to reject appellant's testimony and the claim of self-defense. *See Garrett v. State*, 619 S.W.2d 172, 175 (Tex. Crim. App. 1981).

In reviewing the evidence, we must do so in a light most favorable to the trial court's order of revocation. *Id.* at 174; *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. 1979); *Lopez*, 46 S.W.3d at 482. We conclude that the trial court did not abuse its discretion in revoking appellant's probation on all three grounds alleged for revocation. The point of error is overruled.

The order of revocation of probation is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Kidd, Pemberton and Onion[*]

Affirmed

Filed: April 29, 2004

Do Not Publish

---

[*] Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

6