Opinion filed June 5, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed June 5, 2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00355-CR

                                                    __________

 

                               GABRIEL NICKERSON, JR., Appellant

 

                                                             V.

 

                                         STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 29th District Court

 

                                                       Palo
Pinto County, Texas

 

                                                    Trial
Court Cause No. 13224

 



 

                                             M
E M O R A N D U M   O P I N I O N

This
is an appeal from a judgment adjudicating guilt.  We affirm.

                                                         Proceedings
in Trial Court

Gabriel
Nickerson, Jr. was indicted for stabbing Theresa Shaw in her arm and her torso
with a knife.  A jury was selected, and the case proceeded to trial.  The trial
court determined that the jury  had no chance of reaching a verdict and
declared a mistrial.  Five weeks later, appellant agreed to a plea bargain and
entered a plea of guilty to the offense of aggravated assault with a deadly
weapon.  On July 2, 2007, pursuant to the plea bargain agreement, the trial
court deferred the adjudication of guilt and placed appellant on community
supervision for five years.    








On
October 2, 2007, the trial court conducted a hearing  on the State=s motion to adjudicate. The
evidence established that appellant was a passenger in a vehicle stopped by
Mineral Wells police officers.  Mikel DaShawn Hicks was also a passenger in the
vehicle.  When the State called Hicks as a witness, he invoked his fifth
amendment rights and refused to answer questions about the traffic stop.  The
trial court appointed counsel for Hicks, and the hearing was continued until
October 18, 2007.  At that time, Hicks was represented by retained counsel, and
the State had granted him transactional immunity.  Hicks=s testimony at the hearing was inconsistent
with the sworn statement he had made after the traffic stop.

In
its motion to adjudicate, the State alleged that appellant had violated the
terms and conditions of his community supervision by committing a new offense
of possession of marihuana, by committing a new offense of unlawfully carrying
a weapon, and by possessing a firearm in violation of his community
supervision.  The State withdrew its allegation concerning possession of
marihuana.  After hearing the evidence, the trial court found the remaining two
allegations to be true.  The trial court then found that appellant had violated
the terms and conditions of his community supervision, revoked his community
supervision, adjudicated his guilt, imposed a sentence of confinement for
eighteen years, and assessed a fine of $2,500.  

                                                     Issues
on Appeal

In
his first issue, appellant challenges the sufficiency of the evidence to
support the trial court=s
determination to adjudicate his guilt.  In his second issue, appellant argues
that he was denied a fair trial and was denied his right to confront
witnesses.  In his third issue, appellant contends that he was denied his due
process rights during the adjudication proceedings.








Underlying
his arguments is appellant=s
premise that any reliance upon Hicks=s
statement denied him his right to confrontation under Crawford v. Washington,
541 U.S. 36 (2004) and resulted in an Aunreasonable
determination of facts@
subject to challenge under 28 U.S.C. 2254(d).[1] 
This court has previously rejected the argument that Crawford applies to
this type of proceeding.  Mauro v. State, 235 S.W.3d 374 (Tex. App.CEastland 2007, pet. ref=d).  We note that appellant=s arguments concerning
relief under the federal habeas statute are not properly before us and should
be raised in any later federal proceedings.  These contentions are overruled,
and we shall consider appellant=s
remaining arguments in light of the applicable state law.

                                           Appeal
from a Judgment Adjudicating Guilt

The
adjudication proceedings were conducted after the 2007 amendment to Tex. Code Crim. Proc. Ann. art. 42.12, ' 5(b) (Vernon Supp. 2007). 
Therefore, appellant=s
challenges to the decision to  adjudicate his guilt and revoke his community
supervision are properly before this court.  These challenges are reviewed in
the same manner as if appellant was appealing from a Aregular@
community supervision revocation.  Article 42.12, section 5(b).

                                                           Sufficiency
of Evidence

A.
 Standard of Review for the Revocation of Community Supervision.

In
a community supervision revocation hearing, the State has the burden of proving
by a preponderance of the evidence that a condition of community supervision
has been violated.  Jenkins v. State, 740 S.W.2d 435 (Tex. Crim.
App. 1983).  Proof of one violation of the terms and conditions of community
supervision is sufficient to support the revocation.  McDonald v. State,
608 S.W.2d 192 (Tex. Crim. App. 1980); Taylor v. State, 604 S.W.2d 175
(Tex. Crim. App. 1980); Moses v. State, 590 S.W.2d 469 (Tex. Crim. App.
1979).  The trial court is the trier of the facts and determines the weight and
credibility of the testimony.  Garrett v. State, 619 S.W.2d 172 (Tex.
Crim. App. 1981); Barnett v. State, 615 S.W.2d 220 (Tex. Crim. App.
1981).  Appellate review of an order revoking community supervision is limited
to the issue of whether the trial court abused its discretion.  Flournoy v.
State, 589 S.W.2d 705 (Tex. Crim. App. 1979).  

B. 
Argument on Appeal.

Appellant
specifically argues that the evidence clearly and conclusively established that
appellant did not possess the gun, did not own the gun, and did not use the gun
found at the scene.  Appellant contends that any reliance on the statement by
Hicks that the gun was appellant=s
is Aunreasonable@ because Hicks recanted his
statement thereby depriving appellant of his right to confrontation.








C.
Evidence Presented.

Mineral
Wells Police Officer Jeremy Hamscher  stopped a white four-door Caprice in the
late night/early morning hours on August 27 and 28.  Mineral Wells Police
Department Corporal Adam Davis was the backup officer.  The driver was Tyana
Poole.  Hicks was a passenger in the front seat; appellant was a passenger in
the backseat.   Appellant was laying on his stomach in the backseat with his
feet behind Poole and his head behind Hicks.  Appellant=s eyes were open when the officers approached
the vehicle.  

Officer
Hamscher approached the vehicle on the driver=s
side and talked to Poole while Corporal Davis approached on the passenger
side.  The passenger window was rolled up, and Hicks was Ausing his cell phone quite
a lot.@  When Hicks
rolled the window down, Corporal Davis smelled medium strength Afresh marihuana.@   Poole had no driver=s license, was removed from
the vehicle, and was arrested for driving without a license.  Corporal Davis
then asked appellant to exit the vehicle.  Appellant was wearing only a pair of
baggy pants or shorts.  As Corporal Davis was conducting a pat-down search, he
saw Hicks put a dark-colored pistol with white grips under the front passenger
seat.  Corporal Davis told Hicks not to reach under the seat.  Corporal Davis
went around the vehicle, opened the door, and asked Hicks to get out.  

Hicks
complied, and Corporal Davis found five bullets in Hicks=s pocket when he did a pat- down search.  A
third officer recovered the pistol from the vehicle.  Officers also found
forty-six white tablets, eight and one-half pieces of what was believed to be
Xanax, Ebisu tablets, and a green leafy substance believed to be marihuana in
the car.  Hicks had $920 in his pocket. 

Shortly
after the stop, Mineral Wells Police Detective Penny Judd was called to the
police station to take a statement from Hicks.  Detective Judd read Hicks his
rights before taking his statement.  She spoke with Hicks twice.  The second
time, she was wearing a concealed recording device.  A copy of the interview
was played at the hearing.  

Hicks
informed Detective Judd that he was concerned that appellant would find out he
was making a statement.   After he finished, Detective Judd wrote up his
statement and asked Hicks to read it.  He refused.  Even though he did not want
her to, Detective Judd read the statement out loud to Hicks.  Hicks signed it
in front of her.  Hicks made no changes to the statement and did not tell
Detective Judd that it was wrong. 








The
written statement was introduced into evidence.  In the statement, Hicks
described how appellant gave him the gun, how he took the bullets out of the
gun and put them in his pocket, and how he then placed the gun under the seat
of the car.  

After
the State granted him transactional immunity, Hicks testified concerning the
incident.  Hicks stated that he was getting the insurance papers out of the
glove box when one of the officers pulled his gun and told Hicks, AIf you reach again, I=m going to shoot you.@  When the officers asked
him if he Ahad
anything@ on him,
Hicks told them no.   An officer searched and found the bullets in his pocket. 
They asked where the gun was, and Hicks told them that he did not know.   The
officers then found the gun under the seat.   

Hicks
stated that the gun was his, that he had had it about six months but did not
know the name of the person he had bought it from, and that he had bought it
because he had never seen one like it and because he liked it.  He had paid
$100 for the gun. 

Hicks
also testified that he talked to Detective Judd but that he did not give her a
statement.  Hicks said that he did not tell her that appellant had given him
the gun and that appellant had not asked him to put the gun under the seat. 
Hicks testified that Detective Judd had him sign a blank piece of paper.  Hicks
said that, while he was Ajust
telling her what happened,@
Detective Judd was taking notes.  When he came to the courtroom for the
adjudication hearing, he was shown a statement that had his name on it, and he Awondered how that happened.@  Hicks also testified
that, at the police station while he was telling Detective Judd Awhat happened,@ she showed him the paper
and he told her Athat=s not what that was.@   

Appellant
testified that, while he had seen the gun before, he did not know it was in the
car and had not seen it that night.  He had seen the gun Aon the streets@ but did not know who owned
the gun.  The gun=s
pearl handles made it distinctive.  Appellant also stated that he was surprised
by Hicks=s statement
to the police. 








Poole
testified that, while she had never seen the gun before until police pulled it
out from under the seat, she knew the gun belonged to Hicks.    She also stated
that the police had pulled a gun on Hicks at the scene and that Aplenty of people@ Ain uniforms@
had tried to convince her Ato
do something other than tell the truth.@ 
Poole also stated on cross-examination that she had told Hicks during a
telephone conversation from jail after the first hearing on the motion to
revoke that she had Agot
a hold of Baby [appellant] and he was telling [her] all that needs to be done
and if he couldn=t get
a hold of Bro [Hicks] and them, [she] would get a hold of them.@  Poole denied that her
conversation was about testifying at the hearing and stated, AWe didn=t talk about nothing about
getting our story straight.@


D.
Conclusion.

The
preponderance of the evidence supports the trial court=s findings.  As the trier of facts, the trial
court was the judge of the credibility of the testimony by Hicks concerning his
denial of his signed statement and by Poole.  Taylor, 604 S.W.2d at
179.  Appellant has not established that the trial court abused its
discretion.  The first issue is overruled.

                                    Appellant=s Rights to Confrontation
and Due Process

The
record before this court does not support appellant=s contentions that he was denied the right to
confront Hicks or that he was denied his due process rights.  Appellant did in
fact question Hicks at the hearing.  In view of Hicks=s live testimony, the confrontation clause
placed no constraints on the use of his prior testimonial statements.  Crawford,
541 U.S. at 59 n.9; Mauro, 235 S.W.3d at 376.  Appellant=s due process arguments, to
the extent that he relies on the federal habeas corpus law, are not properly
before this court.  To the extent that his arguments rely on his contention in
his first issue that the evidence is insufficient, those arguments have been
overruled under the first issue.  All of appellant=s arguments under the second and third issues
have been considered, and each is overruled.

                                                                        Holding

The
judgment of the trial court is affirmed.

 

TERRY McCALL

JUSTICE

June 5, 2008

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]28 U.S.C. '
2254(d) provides:

 

An application for a writ of habeas corpus on behalf of
a person in custody pursuant to the judgment of a State court shall not be
granted with respect to any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim--

                (1) resulted in a decision that was
contrary to, or involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United States; or    (2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence presented in
the State court proceeding.