

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00093-CR

---

**MARIA ISABEL VELASQUEZ, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 081727-B-CR, Honorable Steven Denny, Presiding

---

October 22, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant Maria Isabel Velasquez appeals from the trial court's order revoking her deferred adjudication community supervision, adjudicating her guilty of the second-degree offense of aggravated assault with a deadly weapon,[1] and sentencing her to serve seven years in prison. Appellant challenges the trial court's judgment through two issues. We modify the judgment and affirm.

---

[1] TEX. PENAL CODE § 22.02(a)(2).

BACKGROUND

In September of 2023, Appellant pleaded guilty to aggravated assault with a deadly weapon. Pursuant to a plea bargain, the trial court deferred adjudication of Appellant's guilt and placed her on ten years' community supervision. The trial court ordered several conditions of community supervision and informed Appellant in writing that if she failed to comply with them, her community supervision could be revoked. Appellant timely filed a motion for new trial which was denied. However, the trial court granted Appellant permission to appeal. The commencement of Appellant's community supervision was stayed during the pendency of her appeal. *See Lundgren v. State*, 434 S.W.3d 594, 598 (Tex. Crim. App. 2014) (appellant's punishment, including community supervision, is stayed while case on appeal). In her appeal, Appellant requested that the order of deferred adjudication be reformed to correct a clerical error reflecting the proper degree of offense to which she pleaded guilty. The State conceded error, and this Court reformed the order as requested, and affirmed the order as reformed. *Velasquez v. State*, No. 07-23-00385-CR, 2024 Tex. App. LEXIS 4688, at *2 (Tex. App.—Amarillo July 3, 2024, no pet.) (mem. op., not designated for publication). Mandate issued on September 19, 2024.

In January of 2025, the State filed a motion to adjudicate the guilt of Appellant. In its motion, the State alleged that Appellant violated the terms of her community supervision by failing to report for the months of October and November 2024. At a hearing on the State's motion, Appellant appeared with counsel and entered a plea of not true. Clay Young, Appellant's community supervision officer, testified that he met with Appellant in September of 2023 for her initial appointment after the trial court signed the order of deferred adjudication. Appellant informed Young that she was appealing her

case. After discussion with a supervisor, a decision was made that Appellant was not required to report until mandate issued in her appellate case. After receiving mandate in September of 2024, the supervision office made attempts to schedule Appellant to report in October of 2024. Young testified that a text message was sent and a voice mail message was left for Appellant directing her to report to the supervision office on October 9, 2024, at 2:00 p.m. When Appellant did not report for this appointment, Young sent Appellant another text message later that day informing her of the missed appointment and asking her to call him at his office number. A few days later, Young went to Appellant's home address, 407 South Milam, and spoke to a man named Luis who confirmed that Appellant lived there. Young gave Luis an envelope with information to give to Appellant. Young continued to make phone calls and send text messages to Appellant through the month of October. On November 20, Young mailed and emailed Appellant a "final warning" letter asking her to report in person on November 26, 2024, at 1:00 p.m. Appellant did not respond to any of these communications.

Appellant testified that her appellate lawyer did not notify her that mandate had issued and she was unaware that her appeal had ended. She claimed that from September of 2023 until the beginning of 2025, she was staying with her sister at 10031 Charnetta Trail. However, the address that Appellant had given the supervision office was 407 South Milam. She did not give the supervision office her sister's address because "[she] didn't think [she] was on probation." According to Appellant, Luis was "a boyfriend that was breaking into [her] house." She testified that Luis did not give her the letter from the supervision office. Appellant further testified that she did not know the status of her appeal, but "figured [she] would get court papers or served or calls or

3

something, but nobody called [her.]"  She further claimed "something weird" happened with her phone number.  She requested that the trial court leave her on community supervision.

At the conclusion of the hearing, the trial court made the following remarks:

> I am troubled by this case because I've got access to the Court's file and based on the testimony today, you were notified that you should have been back on probation sometime in October – early October.  And I believe that that actually happened, because I can see in the file that you started filing things; Applications for Writs of Habeas Corpus and letters alleging that the State had done all sorts of things to you starting in – October 14 of 2024.  So I think you knew what was going on.

The trial court found that Appellant had violated the terms of her community supervision by failing to report as directed.  The trial court adjudicated Appellant guilty of the offense of aggravated assault with a deadly weapon and sentenced her to seven years' incarceration in the Institutional Division of the Texas Department of Criminal Justice.  Appellant timely appealed the resulting judgment.

By her appeal, Appellant presents two issues.  Her first issue asserts that the trial court abused its discretion and violated Appellant's due process rights by adjudicating her guilty and sentencing her to prison.  In her second issue, she asserts that the judgment should be modified because it does not reflect the proper degree of offense as a second-degree felony, and it contains provisions for costs and fees despite the fact that Appellant was indigent throughout these proceedings and unable to pay such fees.

## LAW AND ANALYSIS

A trial court's order revoking community supervision is reviewed for an abuse of discretion.  *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (citing *Cardona*

4

*v. State,* 665 S.W.2d 492, 493 (Tex. Crim. App. 1984) (en banc)). In a revocation hearing, the State bears the burden of proving, by a preponderance of the evidence, that the defendant violated the terms and conditions of his community supervision. *Id.* at 763–64; *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993) (en banc). The State satisfies this burden when the greater weight of credible evidence presented to the trial court creates a reasonable belief that it is more probable than not that the defendant has violated a condition of his community supervision. *Rickels*, 202 S.W.3d at 763–64. An appellate court reviews the evidence presented in a revocation proceeding in the light most favorable to the trial court's ruling. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).

The trial court is the sole trier of fact and determines issues of credibility and the weight to be given to testimony at a revocation hearing. *Mattias v. State,* 731 S.W.2d 936, 940 (Tex. Crim. App. 1987) (en banc), *overruled on other grounds by*, *Robinson v. State*, 466 S.W.3d 166, 173 (Tex. Crim. App. 2015). The trial court can accept or reject any or all of the testimony presented by the State or the defendant. *Id.*

Proof of any one violation of the terms and conditions of community supervision is sufficient to support a revocation. *McDonald v. State*, 608 S.W.2d 192, 200 (Tex. Crim. App. 1980) (op. on reh'g); *Taylor v. State*, 604 S.W.2d 175, 180 (Tex. Crim. App. 1980).

Notice of Duty to Report

In her first issue, Appellant argues that there is insufficient evidence that she violated the terms and conditions of her probation because there is no evidence in the record to establish that she had notice she was under a duty to report. Specifically, she

5

contends that without notice, she was unable to comply with the requirement to report and the trial court violated her right to due process by revoking her probation. We reject Appellant's contention because her pro se filings in the trial court contradict her claim of lack of notice. The trial court alluded to Appellant's October 2024 filings prior to sentencing. These filings show that Appellant listed 407 South Milam as her address. This is the same address that Young confirmed was Appellant's when he hand-delivered a letter in October addressed to Appellant. Moreover, in her pro se application for writ of habeas corpus, dated October 9, 2024, Appellant states that she appealed the trial court's order of community supervision and that her appeal has been rejected. The certificate of service on the writ is dated October 2, 2024. Finally, we note that in her email to the court clerk, Appellant stated the following:

> Despite seeking assistance from my appeal attorney, no progress has been made, and I was left *uninformed about the status of my case until last month when I was unexpectedly contacted by a probation officer.* (emphasis added).

The evidence before the trial court indicates that Appellant received notice of mandate and had notice of her duty to report. *See Goodson v. State*, 221 S.W.3d 303, 306 (Tex. App.—Fort Worth 2007, no pet.) (evidence of notice of issuance of mandate satisfies fundamental fairness). As such, we conclude the trial court properly exercised its discretion in revoking Appellant's community supervision. We overrule Appellant's first issue.

6

Reformation of Judgment

In her second issue, Appellant asserts that the judgment incorrectly recites the "degree of offense" as a felony of the first degree. However, the record shows that Appellant was convicted of a second-degree felony offense of aggravated assault with a deadly weapon. The State concedes the issue, and we agree. *See Velasquez*, 2024 Tex. App. LEXIS 4688, at *2 (reforming order to reflect proper degree of offense).

Appellant next asserts that the assessment of costs and fees should be removed because she was indigent throughout these proceedings, and the trial court waived all costs and fees, including court-appointed attorney fees. The State concedes that attorney's fees of $1,500.00 and the time payment fee of $15.00 should be deleted from the bill of cost. We agree.

A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the case unless a material change in her financial circumstances occurs. Given that the trial court did not expressly find a material change in Appellant's financial condition, Appellant is presumed to remain indigent, and the assessment of attorney's fees must be deleted from the bill of cost. *See Woodard v. State*, No. 07-23-00377-CR, 2024 Tex. App. LEXIS 4642, at *9–10 (Tex. App.—Amarillo July 2, 2024, no pet.) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. art. 26.04(p)). The Texas Court of Criminal Appeals has concluded that a time payment fee like the one imposed here "must indeed be struck for being prematurely assessed because a defendant's appeal suspends the duty to pay court costs and

7

therefore suspends the running of the clock for the purposes of the time payment fee." *Dulin v. State*, 620 S.W.3d 129, 129 (Tex. Crim. App. 2021).

The bill of cost also includes a sheriff's reimbursement fee of $60.00. A trial court can assess court costs against an indigent defendant other than attorney's fees. *Owen v. State*, 352 S.W.3d 542, 546–47 (Tex. App.—Amarillo 2011, no pet.). Article 102.011(a) of the Texas Code of Criminal Procedure authorizes charging a criminal defendant "$50 for executing or processing an issued arrest warrant, capias, or capias pro fine . . . ." TEX. CODE CRIM. PROC. art. 102.011(a)(2).[2] The clerk's record reflects that an "Alias Capias" was served on Appellant on January 11, 2025. There is a hand-written charge of "$60" on that document. Consequently, we modify the bill of cost to reflect a $50.00 charge for the sheriff's reimbursement fee.

This Court has the authority to modify or reform a judgment to make the record speak the truth when it has the necessary information to do so. *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the bill of cost by deleting the $1500.00 assessment of court-appointed attorney's fees and the $15.00 time payment fee. We modify the sheriff's fee to reflect the statutorily allowable charge of $50.00. We also strike the following statement made in the judgment: "The Court FINDS

---

[2] The fee was amended and increased to $75, effective September 1, 2025. Acts 2025, 89th Leg., R.S., Ch. 584 (HB 2282), § 1. This amendment provides that,

> The change in law made by this Act applies only to a fee imposed for the execution or processing of an arrest warrant, capias, or capias pro fine issued for an offense committed on or after the effective date of this Act. A fee imposed for the execution or processing of an arrest warrant, capias, or capias pro fine issued for an offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

that defendant has financial resources that enable defendant to offset in part or in whole the cost of the legal services provided to defendant."

## CONCLUSION

Having considered both of Appellant's issues, we overrule issue one and partially sustain issue two.  The trial court's judgment is affirmed as reformed.


Judy C. Parker
Justice

Do not publish.